Robert Earl McCOY,
Petitioner-Appellant,

v.

Donald A. CABANA, etc., Edwin Lloyd Pittman, Attorney General of the State of Mississippi, Respondents-Appellees.

No. 85–4596.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 11, 1986.

Robert Earl McCoy, pro se.

Edwin L. Pittman, Atty. Gen., Harold Brittain, Asst. Atty. Gen., Jackson, Miss., for respondents-appellees.

Before POLITZ, GARWOOD and E. GRADY JOLLY, Circuit Judges.

## OPINION

E. GRADY JOLLY, Circuit Judge:

We are asked in this habeas corpus appeal to review the petitioner's conviction to determine if any of the myriad constitutional defects alleged to have occurred in the state proceedings actually did occur. After carefully reviewing the record, we find that no errors of constitutional significance occurred, and we thus affirm the district court's denial of the writ.

### I

In April 1978, petitioner, Robert Earl McCoy, was indicted for the January 8, 1978, shooting murder of his stepfather, James Weatherspoon. His appointed counsel, Morris Phillips, Jr., suspecting that McCoy was incompetent to stand trial, requested a psychiatric examination, which was ordered by the trial judge. McCoy was sent to the Mississippi State Hospital at Whitfield, Mississippi for examination and treatment. By January 1979, McCoy was pronounced competent to stand trial.

The primary evidence against McCoy was provided by his younger sister and brother, who were in the room when the shooting occurred, and by McCoy's own statement to a friend just after the shooting. McCoy testified in his own defense, contending that Weatherspoon threatened him and drew a gun, that McCoy drew his gun, and that, in the struggle, Weatherspoon caused McCoy's gun to discharge. McCoy also presented an insanity defense, supported by lay witnesses and by one of the psychiatrists at Whitfield. On May 1, 1979, McCoy was convicted of murder in the Circuit Court of Leake County, Mississippi and was sentenced to life imprisonment.

McCoy's conviction was affirmed on direct appeal and state habeas corpus petitions were denied. Having exhausted his state remedies, McCoy sought a writ of habeas corpus in the federal courts. Following the magistrate's recommendation, the district court denied McCoy's federal habeas corpus petition without a hearing. McCoy filed a timely Fed.R.Civ.P. 59(e) motion, which was denied, and then filed a timely notice of appeal. The district court granted a certificate of probable cause and granted McCoy in forma pauperis status on appeal.

### II

McCoy raises numerous issues on appeal. First he contends that he was denied counsel of his choice because the state trial court refused to grant a continuance the morning that the trial was to begin so that McCoy could dismiss his court-appointed counsel and retain counsel of his choice. McCoy's second contention is that his appointed counsel failed to provide effective assistance. Third, McCoy argues that the district court's failure to consider during habeas corpus proceedings McCoy's allegation that he was denied character witnesses merits a remand for consideration. McCoy further contends that he was denied a speedy trial due to the delay between indictment and trial. Fifth, McCoy argues that he was improperly denied a competency hearing prior to trial and that new evidence of McCoy's insanity merits a new trial. Sixth, McCoy broadly contends that there was insufficient evidence of guilt to support his conviction. Finally, for the first time on appeal, McCoy argues that he was denied effective assistance of counsel on appeal, that he was denied a proper appeal because the entire record was not on file, and that he was not properly charged by indictment.

We find that several of these contentions are without merit and are summarily dis-

missed.[1] For this reason, we limit our consideration to whether McCoy was unconstitutionally denied the right to counsel of his choice, whether McCoy was denied effective assistance of counsel, whether the district court's failure to consider McCoy's allegation that he was denied a fair trial because of his inability to call character witnesses merits a remand for consideration of this issue, and whether there was sufficient evidence of guilt to support the conviction.

### III

### A

■ McCoy asserts that the trial court unconstitutionally refused to let him employ counsel of his choice. Although a defendant has a constitutional right to counsel of his choice, that right is not absolute. The denial of a last-minute request for a continuance in order to retain new counsel is within the trial court's discretion. *See United States v. Silva,* 611 F.2d 78, 79

(5th Cir.1980). The question in this case is whether McCoy communicated his preference for a change of counsel on the first day of trial so that the trial court was within its discretion in denying this last-minute motion for continuance, or whether prior to trial McCoy communicated his desire for a change of counsel.

McCoy does not dispute the fact that the trial judge first learned of McCoy's desire to change counsel on the morning of April 30, the first day of trial. On that day, Phillips advised the trial judge that McCoy did not want to be represented by Phillips and instead wanted to retain attorney James Abrams. The trial judge ordered the parties to attend a conference in his chambers. Once the parties convened in chambers, the court called Abrams at both his home and office. No one answered the telephone at either location. For the record, the judge reiterated the procedural history of this action, including the delays caused by the question of McCoy's competency. The court then found as a fact that

---

1. McCoy contends that he was denied a speedy trial due to the delay of more than 270 days between his indictment and trial. The mention of 270 days refers to state law. *See* Miss.Code ann. § 99–17–1 (1985 Supp.). His motion to dismiss his indictment on this ground at trial was denied. Of the 372 days between indictment and trial, 260 were caused by McCoy's motion for a continuance due to his incompetence to stand trial. The lower courts correctly held that delays due to continuances requested by a defendant are not to be factored against the state in this determination of whether a delay was unjustified. *See Hill v. Wainwright,* 617 F.2d 375, 378–79 (5th Cir.1980). These 260 days are thus excluded from calculation. The remaining three and one-half month delay is insufficient to trigger a constitutional speedy trial delay. *Gray v. King,* 724 F.2d 1199, 1202 (5th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 381, 83 L.Ed.2d 316 (1984) (ten and one-quarter month delay not "excessive"). There was no speedy trial violation in McCoy's case.

McCoy next argues that he was improperly denied a "pre-sanity hearing" to determine his competency to stand trial and that new evidence of McCoy's insanity merits a new trial. Although a habeas corpus petitioner may assert that he was not competent to stand trial, his allegations will not merit a hearing unless he alleges facts " 'sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the

petitioner.' " *Enriquez v. Procunier,* 752 F.2d 111, 114 (5th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2658, 86 L.Ed.2d 274 (1985), quoting *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir.1973). McCoy's allegations do not meet this standard. There is no indication in the record that he was incompetent to stand trial in April-May of 1979; in fact, although initially incompetent, he was certified to be competent for trial in January 1979. McCoy offers no evidence showing that his condition changed between January and April of 1979. McCoy also asserts that there is new evidence of his insanity but has not shown what that evidence is, nor how it would affect the outcome of the trial were a new trial granted. Thus, any alleged new evidence of insanity does not entitle McCoy to a new trial.

Finally, McCoy's arguments, raised for the first time on appeal, that he was denied effective assistance of counsel on appeal, that he was denied a proper appeal because the entire record was not on file, and that he was not properly charged by indictment will not be decided by this court. Allegations that could have been raised before the district court but were not will not be addressed on appeal unless they involve pure questions of law and failure to do so would result in a miscarriage of justice. *Self v. Blackburn,* 751 F.2d 789, 793 (5th Cir.1985). Since none of these exceptions applies to the instant case, we reject the opportunity to address these issues.

forty special veniremen and all of the witnesses were present in the courtroom. The court continued by stating:

> It is always this court's desire for an accused to have an attorney of his own choice. It has been announced to the court that sometime last year Mr. Abram visited with the defendant in jail while he was confined here in Leake County, but *at no time until this very moment has it been indicated to anyone that it was the desire to discharge the court-appointed attorney and to employ private counsel.*

After expressing confidence in Phillips' ability and noting that Phillips had thus far adequately protected McCoy's interests, the trial court stated that it would give Phillips and McCoy

> ample opportunity to confer during the progress of this trial and to present their witnesses and all testimony admissible under our rules of law. Under the circumstances, I feel I have no alternative but to proceed, the court having no assurance that Mr. Abram has been, in fact, contacted, and having no assurance that he would accept representation. This could very easily be the position this court would be in the next term of court and the term thereafter. So, I am going to proceed this morning, as the case is set.

McCoy, objecting to the district court's finding that McCoy never indicated a previous desire to change counsel, contended that:

Mr. Abram was retained by me last year in July '78. Mr. Phillips is well aware Mr. Abram is my attorney. First of all, I have been up in the Leake County jail. I haven't been able to make a phone call, get a haircut, or a shave. It is impossible for me to contact my attorney if I am being denied my civil rights. Mr. Phillips here has collaborated with the prosecution and the prosecuting witnesses. Plus, he has mishandled my case, unfairly represented me. He has used scare tactics and threats against me.

When questioned about Phillips' alleged threats, McCoy stated that Phillips "threatened me if I don't cop out to a ten-year sentence, I will be convicted and will get life. That is a threat, direct threat. He has not acted in the best interest of his client." The court explained to McCoy that Phillips was merely recommending that McCoy plea bargain with the government and that this was not intended as a threat. McCoy replied that he understood what the court had said, but that he "just found it impossible going to trial with a court-appointed attorney, especially the way Mr. Phillips has mishandled my case. I find it impossible to even get a fair trial." The trial judge then ended the conference by stating, "Well, that's the order of the court. Let's proceed."

State court findings of fact are presumed correct in habeas proceedings unless one of the eight enumerated facts of 28 U.S.C. § 2254(d)[2] is present. *See Sumner v.*

2. 28 U.S.C. § 2254 subsection (d) states:

(d) In any proceedings instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an office or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

*Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Thus, if the trial court found that McCoy did not in fact retain Abrams, or failed to communicate his dissatisfaction with Phillips to Phillips prior to the morning of April 30, a federal court must presume these findings to be correct. The question, then, is whether the trial court made findings of fact on these issues. If the trial court did not render such findings, the district court should have held an evidentiary hearing to determine whether McCoy's contentions are true. *See Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ We hold that the magistrate and district court correctly determined that the trial court implicitly rejected McCoy's version of the facts. In *Townsend,* the Supreme Court wrote that

if no express findings of fact have been made by the state court, *the District Court must initially determine whether the state court has impliedly found material facts.* No relevant findings have been made unless the state court decided the constitutional claim tendered by the defendant on the merits.... [I]f the prior state hearing occurred in the course of the original trial—for example, on a motion to suppress allegedly unlawful evidence, as in the instant case—it will usually be proper to assume that the claim was rejected on the merits.

If the state court has decided the merits of the claim but has made no express findings, it may still be possible for the

District Court to reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia.

*Id.,* 372 U.S. at 314, 83 S.Ct. at 757–58.

In the instant case, the magistrate and district court could properly have assumed that the trial court rejected McCoy's claims on the merits, implicitly finding facts contrary to McCoy's assertions. Although the relevant findings were rendered before McCoy advanced his contentions, the trial court listened to McCoy's allegation and then held that he was prepared to stand by his original findings. Since the hearing occurred in the course of the trial, the magistrate and district court reasonably assumed that the trial judge had rejected McCoy's claims on the merits and thus were not required to hold an evidentiary hearing.

Since the trial court implicitly discredited all the allegations raised by McCoy, the trial court did not err in denying McCoy's motion for a continuance on the first day of trial.

## B.

McCoy next asserts that his attorney provided ineffective assistance of counsel.[3] In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that in order to merit habeas corpus relief on a claim of ineffective assistance of counsel, a petitioner must show both that his attorney's performance fell below the professional stan-

---

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:
And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respon-

dent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

3. The magistrate applied incorrect legal standards when determining whether McCoy had been denied effective assistance of counsel. Nonetheless, since McCoy's allegations present no viable claim under the proper legal standard, any error by the magistrate in choosing the proper standard was harmless.

dard and that, as a result, there is a reasonable probability that the outcome of his trial was different than it would have been with competent counsel. *Id.*, 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068.

■ McCoy asserts that his attorney threatened and attempted to coerce him into accepting a ten-year plea bargain. As McCoy resisted these efforts and did not plead guilty, he can show no prejudice from any alleged "threats" by Phillips. McCoy also argues that Phillips was ineffective in not presenting certain evidence to the jury, but McCoy has failed to indicate what evidence this was. After carefully reading McCoy's pleadings, we can only assume that he is referring to a psychiatric report prepared in March or April 1978 that was not introduced as evidence at trial. This report, indicating that McCoy was incompetent to stand trial, motivated Phillips to move for a continuance and further testing and treatment for McCoy, which resulted in finding that McCoy was competent to stand trial.

■ Phillips' decision not to introduce this report into evidence did not cause Phillips' performance to fall below professional standards. Phillips elicited testimony from both state and defense witnesses, all family members, that McCoy had been indulging in odd behavior not only on the morning of the shooting, but also prior to that time. McCoy's testimony also suggested acute paranoia. Phillips also presented the testimony of Dr. McKinley, one of the psychiatrists who had treated and examined McCoy at Whitfield. McKinley testified that McCoy was a paranoid schizophrenic and probably had been for two and one-half to four years, that he was temporarily better, at the time of trial, than he had been in the past, and that, at the time of the shooting, McCoy had been under an insane delusion and could not distinguish between right and wrong.

McCoy has not asserted what the 1978 psychiatric report would reveal. In *Strickland,* the Supreme Court held that there is a strong presumption that an attorney's decision to introduce or withhold evidence is a tactical decision made "in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Because McCoy has presented no evidence to rebut this strong presumption, we find that McCoy was not denied effective assistance of counsel.

### C.

■ McCoy next argues that this case should be remanded because the district court erroneously failed to consider during habeas corpus proceedings McCoy's allegation that the trial judge denied him a fair trial by refusing to let him call character witnesses who were in court and ready to testify. The district court did not address this issue, and thus committed error. *See Daigre v. Maggio,* 705 F.2d 786, 789 (5th Cir.1983) (lack of explanation of reasons for denial deprives appellate court of basis for meaningful review). Any error was harmless, however, because this issue did not merit relief or an evidentiary hearing. The transcript does not reflect the presence of these character witnesses, nor any attempt by McCoy to introduce their testimony.

■ Even if McCoy's contention is viewed as an allegation of ineffective assistance of counsel because the witnesses were not called, McCoy's contention fails. McCoy does not name these witnesses nor give their intended testimony. " '[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative.' " *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir.1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984), quoting *Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir.1978). This case presents no exception.

Not only is the content of the alleged testimony unknown, we are unable to determine how such witnesses could have helped McCoy's case. McCoy admitted the shooting, although he asserted that it was

an accident. He also presented evidence that he was insane at the time. If the witnesses were to testify that McCoy was peaceable and law-abiding, this would have conflicted with testimony that he was prone to irrational violence when his paranoid schizophrenia flared up. If they were to testify that he was insane, their testimony would have been cumulative. Finally, testimony regarding Weatherspoon's bad character would have been cumulative; several witnesses testified about Weatherspoon's reputation, his habitual carrying of a gun, and his earlier shooting and wounding of McCoy's father.

Since the district court's error in failing to specifically deal with this contention was harmless, we reject McCoy's argument that he was denied a fair trial because some character witnesses were not called to testify at trial.

### D.

Finally, McCoy argues that there was insufficient evidence of his guilt to support his conviction. He states that there was no "factual evidence" of his guilt and no evidence as to the cause of death. We disagree.

■ The standard for reviewing the sufficiency of the evidence is whether reasonable minds could conclude beyond a reasonable doubt, from the evidence presented, that the defendant committed all the elements of the offense. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979). At trial, the prosecution presented evidence from McCoy's thirteen-year-old sister Antoinette and his fourteen-year-old brother Steve. Both were present in the room when the shooting occurred, though neither was actually watching at the time McCoy fired the shot. Antoinette testified that she heard McCoy and Weatherspoon argue, heard the shot and turned to watch and then heard Weatherspoon say something to the effect of "Why did you shoot me?" After McCoy left, she called the police. Steve testified that he saw McCoy's "arm go up as he heard the shot, although he did

not see the gun, and that McCoy had just pushed Weatherspoon back and Weatherspoon was again moving toward him. Earnest Griffin, who was waiting for McCoy outside the house, testified that McCoy admitted to him that he had shot Weatherspoon. McCoy also testified that he shot Weatherspoon, but contended that he acted in self-defense and that the shooting was an accident. This constitutes ample evidence that McCoy fired the shot.

■ McCoy also contends that there was insufficient evidence of the cause of Weatherspoon's death. Again, we disagree. At trial, a pathologist testified that, in his opinion, Weatherspoon died from the effects of the gunshot wound. Nonetheless, the autopsy report, written by the same pathologist, states that the cause of death could not be determined. In explaining the report at trial, the pathologist stated that the embalming of Weatherspoon's body prevented a determination of exactly which internal organs failed, thus causing death, but that any failure was due to the gunshot wound. On cross-examination, he admitted that it was also possible that Weatherspoon had died from a stroke, from negligent medical treatment, from the effects of the post-shooting operation, or from poisoning. Despite the hypothetical possibility of post-shooting intervening causes of death, the state presented adequate evidence that Weatherspoon died as a result of the bullet fired by McCoy. As the evidence satisfies the *Jackson v. Virginia* standard, we find that there was sufficient evidence in the record to support McCoy's conviction.

### IV

A review of the record reveals that McCoy was afforded a full and fair trial before being convicted of his stepfather's murder. The state delayed prosecution until McCoy was determined to be competent to stand trial, appointed competent counsel, allowed McCoy to present evidence and challenge the evidence presented by the prosecution. For these reasons and for the reasons stated in this opinion, the judgment

of the district court denying McCoy's petition for a writ of habeas corpus is

AFFIRMED.