589 So.2d 112 (1991)
Ethel L. HUGHES
v.
STATE of Mississippi.
No. 90-KA-0172.
Supreme Court of Mississippi.
November 6, 1991.
*113 Terry M. Haimes, Picayune, for appellant.
Mike C. Moore, Atty. Gen., Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
Ethel L. Hughes was convicted of selling less than an ounce of marijuana, as prohibited by Miss. Code Ann. § 41-29-139(a)(1), (b)(3), in the Circuit Court of Winston County, Mississippi. On the day following her trial, the circuit court entered a written order sentencing Ms. Hughes to three (3) years' confinement in the custody of the Department of Corrections, with two (2) years suspended. The sentencing order incorrectly stated that Ms. Hughes had been convicted of selling cocaine, rather than marijuana. Feeling aggrieved, Ms. Hughes appeals, asserting the following four assignments of error:
1. The trial court erred in failing to grant the defendant's motion for continuance to allow additional time to prepare for trial;
2. The trial court erred in failing to grant the defendant's motion for continuance in order to allow time to secure an independent analysis of the alleged marijuana after granting the defendant's motion to produce;
3. The trial court erred in allowing testimony concerning an electronic listening device used in the alleged buy of marijuana from the defendant because the existence of the device was not revealed in discovery and it was not produced to the defense for inspection; and
4. The trial court erred in sentencing the defendant for sale of cocaine after indictment and trial for sale of marijuana.
Because we find the failure to grant a continuance deprived this defendant of a fair trial, it is not necessary that assignment of error No. 4 be discussed.
In considering whether the lower court has abused its discretion in denying a motion for a continuance, we have said that "where the trial record reveals a statement of facts indicating a lack of fair trial, it becomes the duty of this Court to insure such trial by granting a new trial," especially where the evidence which has been presented leaves considerable doubt that the defendant received a fair trial. Barnes v. State, 249 So.2d 383, 385 (Miss. 1971).
An examination of the record in this case reveals the following facts (some of these facts were not before the court when the motion for a continuance was first considered but were made a part of the record at the hearing on the defendant's motion for a new trial):
1) The crime for which Ethel Hughes was indicted allegedly occurred on July 13, 1989. Ms. Hughes was indicted on October 19, 1989. She received notice that she was being charged on October 20. Public Defender Hugh Hathorn was appointed to represent Ms. Hughes. On November 1, 1989, the defendant retained attorney Terry Haimes to represent her. Haimes called Hathorn at that time and Hathorn advised him that the defendant's case had been set for the following day, but that the court had continued the case until Monday, November 6, for call. Haimes attempted to get in touch with the district attorney but was told that he was at a conference and would not be back in town until Monday, November 6. The trial of Ethel Hughes was had on November 9, 1989. It was three weeks from the date of the indictment to the trial. Of those three weeks, Terry Haimes had eight days to prepare for trial.

*114 2) Haimes was also retained to represent Dennis Hughes, the son of Ethel Hughes, who was scheduled to be tried on November 10, 1989. During the period when he was preparing for Ethel Hughes' trial, he was also preparing for Dennis' trial.
3) Haimes had communication problems with Ethel Hughes, who he described as "semi-literate" with little "formal education." She had trouble remembering back to July 13, 1989, the date of the alleged sale. The names of witnesses Haimes received from his client were nicknames and he was unable to discover the identity of these people until the day he filed an affidavit in support of the motion, November 9, 1989. There were four witnesses who testified on behalf of Ms. Hughes. Because of the delay in receiving the names, Haimes talked to one of the witnesses on the afternoon of the day before the trial and to the other three on the day of the trial. These witnesses also had trouble remembering back to July 13, 1989.
4) Haimes did not interview the State's witnesses because he spent all his time preparing pleadings and motions, doing research as to possible defenses, and attempting to locate witnesses for Ms. Hughes. He also spent some of the time in court when the court was ruling on the motions and the jury was being selected. Haimes is a sole practitioner who had just recently reopened an office after being suspended from practice for six months. He has no secretarial help and does his own typing.
5) On November 6, 1989, Haimes presented a motion for an independent analysis to the court. The court heard arguments from both counsel as to whether a continuance should be granted on that basis. The court denied a continuance but granted the motion for an independent analysis. The court requested the district attorney to make the necessary calls to the Crime Lab and have the sample sent to Mississippi State for an analysis. Specifically, the court said to the district attorney, "I will ask that you tell [Haimes] the name and phone number of the analyst that is commonly used at Mississippi State  his name escapes me at the moment  so that he will at least know immediately who is available to do that... ." On November 9, 1989, before trial began, the court again considered a motion for a continuance. At that time, the district attorney stated, in regard to the motion for an independent analysis, "The motion was granted, and the State as of this moment has not been informed as to who the expert is to conduct the independent analysis so that we can provide ... a sufficient sample for testing." Haimes responded by saying, "I orally brought up [the motion] on the 6th, and at that time you requested the District Attorney to provide me with the name of the person at Mississippi State for the independent analysis." The district attorney said that he would be happy to furnish names if so requested by the defense but Haimes never asked him for any name. The court denied the continuance on this basis saying that the court's remark in the prior hearing was just a suggestion and there was no impropriety as to the supplying of a name.
Haimes, a sole practitioner, had eight days to prepare for trial. In those eight days, he had to prepare pleadings and motions, do research, attend court, and interview witnesses all while running his law practice. Is it any wonder that he did not have adequate time to prepare for trial? In larger law firms, an attorney often does none of this work himself. He has someone who does the research, someone who does the typing, and often someone who interviews his witnesses or conducts an investigation of the case. In effect, the defendant is being penalized for hiring a sole practitioner to represent her in this matter.
Especially troubling is the fact that the court granted the defendant's motion for an independent analysis and in so holding, put the burden on the district attorney to supply Haimes with the name of the analyst at Mississippi State and then when the district attorney failed to supply that name, found no impropriety in the failure. *115 The court said that its earlier remarks were just a suggestion. However, the actual statement of the court as revealed by the record was, "I will ask that you tell him the name and phone number of the analyst that is commonly used at Mississippi State  his name escapes me at the moment  so that he will at least know immediately who is available to do that... ." The statement was much more than a suggestion by the court; it imposed an affirmative duty requiring the State to provide Haimes with the name. Clearly, Haimes considered it so. Because the State failed to fulfill that duty, the judge should have granted a continuance when that fact was brought to his attention just prior to trial.
The identification of Ethel Hughes was based on the testimony of two witnesses. The agent who was actually involved in the transaction made a visual identification of Ethel Hughes. Lieutenant McCart with the Louisville Police Department, who was listening to the transaction via a body transmitter with which the agent was equipped, could not see the person with whom the agent was dealing but was able to hear the transaction. Based on that, he identified Ethel Hughes' voice as the voice he heard. The testimony of these two witnesses was vital to the State's case against Ethel Hughes.
Rule 901(a) of the Mississippi Rules of Evidence provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." By way of illustration, 901(b)(5) allows "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Comment (a) to the Rule stresses the importance of the genuineness of the evidence. "The authentication and identification aspects of evidence are central to the concept of relevancy. Unless it be satisfactorily shown that an item of evidence is `genuine,' the item is irrelevant and should be excluded."
There is a significant difference between aural identification based on a recording and one which is made of a voice which has not been recorded.
The constitutional issues may be more significant where identification has been made of an unrecorded voice, rather than of a recording. Where no recording has been made, the danger of misidentification may be considerable. Where, however, the speaker's conversation was recorded, various methods exist to reduce the likelihood of misidentification, such as testimony by a voice expert, use of a voice spectrogram, or identification of the voice on the recording by someone who is clearly familiar with the defendant's voice.
J. Carr, The Law of Electronic Surveillance § 7.5(c)(1) (1989).
The validity of voice identification testimony is within the province of the jury. Gray v. State, 549 So.2d 1316, 1319 (Miss. 1989). The defendant should have been allowed to test the listening device. The credibility of Lieutenant McCart's identification of the voice he heard as that of Ethel Hughes was clearly a relevant issue in this case. Testing the equipment is one way in which to attack that credibility.
Considering all these facts together, it is obvious that the defendant received less than a fair trial. That inadequate preparation might have made a difference to this case is supported by the fact that at the close of the evidence, the jury deliberated for thirty minutes after which they returned to the courtroom and said that they had not reached a verdict. The judge asked how they stood numerically, and they indicated the vote was eight to four. The jury then retired to continue deliberations. Approximately an hour later, the jury brought in a verdict of guilty.
In Barnes, supra, we said:
It has been said in Cruthirds v. State, 190 Miss. 892, 2 So.2d 145 (1941):
Section 26 of the Constitution of Mississippi guarantees to every person a fair and impartial trial. A fair and *116 impartial trial includes a reasonable opportunity to prepare for trial. * * * In Coker v. State, 82 Fla. 5, 89 So. 222, the court set forth the right in these words: "Justice requires, and it is the universal rule, observed in all courts of this country, it is most sincerely to be hoped, that reasonable time is afforded to all persons accused of crime in which to prepare for their defense. A judicial trial becomes a farce, a mere burlesque, and in serious cases a most gruesome one at that, when a person is hurried into a trial upon an indictment charging him with a high crime, without permitting him the privilege of examining the charge and time for preparing his defense. It is unnecessary to dwell upon the seriousness of such an error; it strikes at the root and base of constitutional liberties; it makes for a deprivation of liberty or life without due process of law; it destroys confidence in the institutions of free America and brings our very government into disrepute." (190 Miss. at 896-897, 2 So.2d at 146).
Barnes, 249 So.2d at 385.
Because the defendant was denied her constitutional right to a fair trial, this case is reversed and remanded for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.