667 So.2d 622 (1995)
Willie Leon ATTERBERRY
v.
STATE of Mississippi.
No. 92-KA-00731-SCT.
Supreme Court of Mississippi.
December 21, 1995.
*624 Robert B. Helfrich, Hattiesburg, for Appellant.
Michael C. Moore, Attorney General, Jackson, W. Glenn Watts, Sp. Ass't Attorney General, Jackson, for Appellee.
Before PRATHER, P.J., and BANKS and McRAE, JJ.
BANKS, Justice, for the Court:
In this matter we are confronted with whether the amendment of a return of capias, by an officer, and without leave of court renders the indictment invalid. We hold that it does not. We find that all other issues are without merit and we affirm.

I.
On January 28, 1991, Willie Leon Atterberry requested that Anthony McGill drive him to the apartment of Ursula Bruno. McGill drove Atterberry to Bruno's apartment, but first the two stopped at a gas station, where Atterberry put gasoline in a can. Atterberry wanted to talk to Bruno about dropping assault charges that each had filed against each other. McGill testified that Atterberry told him, that if Bruno was not cooperative, he was going to burn her house down. After talking with Bruno for a few minutes, she left and went to work. Atterberry admitted to throwing gasoline into Bruno's apartment. McGill an eyewitness testified that he saw Atterberry kick the door in, go inside with a gas can, come back out, light his cigarette lighter three times and throw it into the apartment.
Later on January 28, 1991, Atterberry was arrested for arson. On July 15, 1991, an indictment was filed against Atterberry, which was served on him the next day. On July 26, 1991, an arraignment was held where Atterberry pled not guilty. On October 25, 1991, trial was set to begin November 4, 1991. On October 28, 1991, Atterberry filed a motion to dismiss. On October 30, Atterberry retained personal counsel. On October 31, 1991, Atterberry's court appointed counsel filed a motion to withdraw. The trial was held on November 4, 1991.
Before any testimony was heard at trial the court held a hearing to determine whether Atterberry's court appointed attorney, Mr. Robert Helfrich, or Atterberry's privately hired counsel, Mr. Paul B. Johnson III, would proceed. The judge began the hearing by noting that "this defendant was advised that if he did in fact retain an attorney, that he needed to advise that attorney that this matter has been set for trial." Mr. Johnson stated that Atterberry had not informed him that the trial had been set and only became aware of that fact four days before trial. Mr. Johnson went on to say that the victim, Bruno, was a necessary party to the defense and could not see proceeding without her. Mr. Johnson informed the court that Atterberry believed that he could locate Bruno if he had a little time. Mr. Johnson further stated that he could not try the case that day. Atterberry then admitted that the court informed him that notice that trial was scheduled should be given to any counsel Atterberry retained. Mr. Johnson reiterated that he would not proceed without a continuance. The trial court replied that Mr. Helfrich would be proceeding because it was not granting a continuance.
Later, after jury selection, the court held another hearing regarding the motions to dismiss for violating Atterberry's right to a speedy trial and for wrongful service of process. The motion for denial of a speedy trial was based on the proposition that Atterberry was unable to recall the day in question. Atterberry has failed to raise this as a basis on appeal. After the trial judge asked Atterberry's court appointed counsel if the denial of a speedy trial motion was in conflict with the motion for a continuance filed by the hired counsel, Atterberry's court appointed counsel decided not to be heard on the motion *625 and let it stand on its own. The prosecutor pointed out that plea negotiations were going on with Atterberry and that was the cause for any delay. The judge denied the motion to dismiss for denial of a speedy trial.
Officer Gretsch Howell testified that he personally handed indictments to Atterberry and to his cellmate. Officer Howell identified Atterberry as the man he handed the indictment to. Officer Howell further testified that he had accidentally wrote Atterberry's cellmate's name on the back when he filed the return with the court. On November 1, 1991, Officer Howell crossed out the cellmate's name and wrote Atterberry's on the capias. Officer Howell reiterated that he was sure that he had personally served Atterberry with the correct indictment. Atterberry testified that he was never served by Officer Howell and that he received the indictment from his cellmate. Atterberry also testified that, at his arraignment, he knew that he was charged with arson. Atterberry alleged that, at the arraignment, he was unaware that he was being charged as an habitual criminal. Atterberry was asked whether the judge at the arraignment asked if he had the indictment charging him as an habitual criminal. Atterberry replied "no, sir, they were telling me habitual, a big one and a little, I don't know." Officer Howell was brought back to the stand and stated that he was sure that he handed Atterberry a copy of the indictment charging him as an habitual criminal. The court denied the motion. Atterberry was convicted of first degree arson as an habitual criminal and sentenced to life imprisonment with no chance for parole. From this verdict he appeals.

II.

A.
The defendant asserts that the trial court erred in denying his motion to dismiss because of wrongful service of process of the indictment. The defendant claims that he was never personally served by Officer Howell and received the indictment from his cellmate. The defendant also relies on the fact that the return of capias originally did not have the defendant's name on it. The defendant further claims that personal service of the indictment is jurisdictional and the indictment should have been dismissed. However, the State claims that the defendant was personally served.
The trial court held an evidentiary hearing to determine whether the defendant was personally served. During the hearing Officer Howell testified that he had personally served a copy of the indictment on the defendant, but accidently wrote the defendant's cellmate's name on the return of capias. Officer Howell also testified that after he noticed the mistake he crossed out the incorrect name and placed the defendant's name on the return of capias. The defendant testified that he had not been personally served and that he received the indictment from his cellmate and not Officer Howell. The record shows that the defendant was aware that he was being charged as an habitual criminal at the grand jury indictment.
The trial court made a finding that the defendant had been personally served. The defendant claims that it was error for the court to make such a finding because the testimony of Officer Howell was in contrast with the defendant's. "When the trial judge sits as the finder of fact, he has the sole authority for determining the credibility of the witnesses." Yarbrough v. Camphor, 645 So.2d 867, 869 (Miss. 1994); Bryan v. Holzer, 589 So.2d 648 (Miss. 1991).
The defendant cites Willenbrock v. Brown, 239 So.2d 922 (Miss. 1970), for the proposition that the presumption that an officer's return of process is correct can be shown to be untrue by either party. In our case that is exactly what was attempted during the evidentiary hearing. Furthermore the court in Willenbrock, ruled that the trial court had found that the return of service was untrue, but that service had been made in the manner and form required by law. Id. at 925. The court in Willenbrock, ended the issue by saying that it would have been better procedure for the court to order the officer to perform the ministerial act of amending the return, but "such is not essential to the validity of the judgment." Id. at 925.
*626 The defendant also cites Reichman-Crosby v. Horton, 143 Miss. 141, 108 So. 443 (1926) and Lampton-Reid Co. v. Allen, 177 Miss. 698, 171 So. 780 (1970). Both of these cases deal with the affirmation of trial court determinations that a party was not served. However, these cases do not assist the defendant, because they stand for the proposition that the fact that service actually occurred can be challenged.
The defendant also cites Birindelli v. Egelston, 404 So.2d 322 (Miss. 1981). In Birindelli, a nonresident father was allegedly served with process by mail and publication for an adoption hearing. When the father failed to appear the court granted the adoption on the premise that the father had abandoned the children. This Court reversed because the return of service had been mistakenly filed in the wrong district. The decision of this Court's reversal in Birindelli, was based on the well settled rule that when a nonresident is being served constructively by statute, strict compliance with the statute is jurisdictional. Here we deal with personal service. As to whether the defendant was actually served, the trial court's finding was not manifestly in error or contrary to the overwhelming weight of the evidence.

B.
Atterberry next argues in the alternative, that since Officer Howell amended the capias without leave of the court that the indictment should have been dismissed. The case law is silent as to the proper recourse when an officer amends a capias as Officer Howell has done. The defendant cites the Mississippi Rules of Civil Procedure as a guide to a determination. These rules are no assistance to him. While Rule 4(g) provides that amendment to proof of service should be done with court approval, Rule 4(f) provides that failure to make proof of service does not affect the validity of the service. We hold today, as this Court did in Willenbrock, that it may have been better procedure for the officer to have received leave from the court to amend the capias, but such is not essential to the validity of the judgment. Id. at 925.

III.
The defendant contends that he was denied his constitutional right to a speedy trial. The Sixth Amendment to the United States Constitution and Article III Section 26 of the Mississippi Constitution both guarantee an accused a right to a speedy trial. For constitutional purposes, the defendant's right to a speedy trial attached at the time of arrest. Thorson v. State, 653 So.2d 876, 889 (Miss. 1995); Giles v. State, 650 So.2d 846, 850 (Miss. 1995); Vickery v. State, 535 So.2d 1371, 1376 (Miss. 1988). Thus, the defendant's right to a speedy trial in this case attached on January 28, 1991, the date of arrest.
"Once the constitutional right to a speedy trial has attached, this Court must examine the facts in accordance with Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to determine whether the constitutional right to a speedy trial has been denied." Giles, 650 So.2d at 850; Handley v. State, 574 So.2d 671, 674 (Miss. 1990); Vickery, 535 So.2d at 1376; Dedeaux v. State, 519 So.2d 886, 888 (Miss. 1988).
All four Barker factors, (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) any prejudice resulting to the defendant from the delay, must be considered together and assessed in light of all the circumstances which include the conduct of the prosecution and the accused. Giles, 650 So.2d at 850; Handley, 574 So.2d at 675; Vickery, 535 So.2d at 1376.

A. Length of Delay
"The delay is the triggering mechanism" and "must be presumptively prejudicial" or the analysis is halted. Jaco v. State, 574 So.2d 625, 630 (Miss. 1990); Doggett v. United States, 505 U.S. 647, 655-57, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520 (1992). This Court has previously held in Smith v. State, 550 So.2d 406, 408 (Miss. 1989), that a delay of eight months is presumptively prejudicial. Jasso v. State, 655 So.2d 30 (Miss. 1995) (559 day delay); Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985) (298 day delay). In this case the defendant was arrested January 28, 1991, and the trial began November *627 11, 1991. This constituted a delay of 280 days (or a little over nine months) from when the defendant's constitutional right to a speedy trial attached and when trial began. This is well over the presumptively prejudicial requirement set out in Smith, thus the other prongs of the Barker test must be analyzed.

------------------------------------------
 ACTION DATE
------------------------------------------
 ARREST 1/8/91
------------------------------------------
 ARRAIGNMENT 7/26/91
------------------------------------------
 TRIAL SETTING 10/25/91
------------------------------------------
 TRIAL 11/4//91
------------------------------------------

B. Reason for the Delay
The only reason for delay was offered by the State. The State asserts that attempts of negotiating a plea agreement with the defendant was the reason for any delay. The State further claims that once negotiations for a plea broke down at arraignment, the case was set for trial immediately. There is no evidence in the record as to whether the defendant acquiesced to these plea negotiations. Any delays which are attributable to the accused tolls the running of the clock; however, the time of the delay is assessed against the State if the State fails to show good cause for such delay. Vickery, 535 So.2d at 1375, 1377.

C. Assertion of the Right to Speedy Trial
It is the State that bears the burden of bringing the accused to trial in a speedy fashion. Jackson v. State, 614 So.2d 965, 969 (Miss. 1993); Perry v. State, 419 So.2d 194, 199 (Miss. 1982); Vickery, 535 So.2d at 1377. However, this Court has previously opined that by demanding a speedy trial the accused "gains far more points under this prong of the Barker test" than when he does not. Jaco, 574 So.2d at 632. In this case the Defendant never demanded a speedy trial. Therefore, he is not entitled to any extra points under this prong. It has also been held that failure to assert a right to a speedy trial should be given "strong evidentiary weight" in the Barker analysis. Fleming v. State, 604 So.2d 280, 301 (Miss. 1992); Adams v. State, 583 So.2d 165, 170 (Miss. 1991). The defendant brought the denial of a speedy trial issue up for the first time at trial. In fact, the Defendant moved for a continuance, which could be considered as contrary to any concerns about a speedy trial.

D. Prejudice to the Accused
This prong of the analysis encompasses two dimensions, first the actual prejudice resulting to the accused in defending his case, Jaco, 574 So.2d at 632; Perry, 419 So.2d at 200; Wells v. State, 288 So.2d 860, 863 (Miss. 1974), and second inordinate delay:
wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends" These factors are more serious for some than for others, but are inevitably present in every case to some extent ... [citations omitted]
Moore v. Arizona, 414 U.S. 25, 26-27, 94 S.Ct. 188, 190, 38 L.Ed.2d 183 (1973) (quoting Barker, 407 U.S. at 537, 92 S.Ct. at 2195); Jaco, 574 So.2d at 632; Trotter v. State, 554 So.2d 313, 318 (Miss. 1989). There are three examples of prejudice which an accused may suffer because of the delay: 1) Oppressive pretrial incarceration; 2) Anxiety and concern of the accused; and 3) Impairment of the defenses. Rhymes v. State, 638 So.2d 1270 (Miss. 1994). The accused is not required to put forth an affirmative showing of prejudice to prove his right to a speedy trial was violated. Wiley v. State, 582 So.2d 1008, 1012 (Miss. 1991). Nevertheless an absence of prejudice weighs against a finding of a violation.
In this case, the only prejudice claimed on appeal is that the victim had moved from the jurisdiction and was unable to testify on Atterberry's behalf, this alleged prejudice was not claimed in the trial court. In the motion to the court, Atterberry only alleged that he was unable to remember what he did the day of the incident. Atterberry did not raise that as a point of prejudice *628 on appeal, probably because he testified at trial giving details of the incident. Atterberry claims that the victim would have offered testimony that would have impeached a prosecution witness and bolstered Atterberry's testimony.
The State had issued a subpoena on the victim, but was unable to obtain her for trial. The victim was supposedly living in Louisiana at the time of the trial. The record is silent as to when the victim left the jurisdiction. In Rhymes, this Court refused the argument that the defendant was prejudiced by the inability to call the victim's brother as a witness, because there was no proof that the defendant had secured the witness prior to trial and lost him due to the delay and there was no proof that the defendant had attempted to secure his appearance by subpoena. Id. at 1274. The Court in Rhymes further ruled that the defendant could not claim that he was unable to participate in rehabilitative endeavors as prejudice because he was raising this issue for the first time on appeal. Id. at 1275.
Without either evidence of the victim's departure date or her expected testimony it is hard to show that Atterberry was actually prejudiced. Even if Atterberry could prove prejudice because of the absent witness, it would be barred because he is raising this as prejudice for the first time on appeal. Atterberry has not claimed any prejudice under the second dimension of this prong. Thus, with no showing of prejudice Atterberry is left with only the presumptive prejudice arising out of the first prong of the Barker test. Fleming, 604 So.2d at 301; Adams, 583 So.2d at 170.
In considering all the factors of the Barker test, it clearly appears that there was no violation of Atterberry's right to a speedy trial. While Atterberry is not required to ask for a speedy trial or to show prejudice, the lack of both hurts his argument. That coupled with the fact that Atterberry moved for a continuance and is also appealing the denial of the continuance, illustrates that Atterberry's rights were not violated. Another factor that illustrates the lack of a violation, is the fact that the defense attorney, during the hearing of the motion, offered no argument to support the motion, when the court inquired as to whether it was in contradiction with the motion for a continuance. Finally, at trial the motion was based on the fact he could not remember the incident in question, but now on appeal Atterberry claims that he was unable to call the victim as a witness. Atterberry's constitutional right to a speedy trial was not violated.

IV.
Atterberry next claims that the denial of appointed counsel's motion to withdraw violated his right of counsel of choice. The State argues that the trial court did not rule on this issue and therefore it cannot be raised as error. The record indicates that the court appointed counsel was prevented from withdrawing, but the hired counsel was not prevented from assisting, which he did. Atterberry argues that the right to counsel of choice is absolute. Atterberry relies upon Myers v. State, 296 So.2d 695 (Miss. 1974), where this Court reversed a conviction because the defendant was denied counsel of choice. In Myers, the Court had wrongfully disqualified private counsel from the case, because counsel was a partner in a firm with an elected county attorney. On the day of trial the court appointed counsel successfully moved to have the hired counsel reinstated, but the hired counsel was unprepared and the trial went on with appointed counsel. Myers cites Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1987). In Crooker the United States Supreme Court held that:
The right of an accused to counsel for his defense, though not firmly fixed in our common-law heritage, is of significant importance to the preservation of liberty in this country. That right secured in state prosecutions by the Fourteenth Amendment guarantee of due process, includes not only the right to have an attorney appointed by the State in certain cases, but also the right of an accused to "a fair opportunity to secure counsel of choice."
Id. at 439 (citations omitted) (quoting Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932)).
*629 In Crooker, the Supreme Court was dealing with the issue of whether it was proper to admit the defendant's confession into evidence after he requested to have an attorney present during custodial interrogation. Myers also cites Reickauer v. Cunningham, 299 F.2d 170 (4th Cir.1962). In Reickauer, the Fourth Circuit reversed the conviction because, the sheriff forced the defendant to take the sheriff's friend as counsel or do without. The court in Reickauer ruled that:
Certainly the petition alleges precise and distinct facts which if true show that the petitioner was denied counsel of his own choice. Such denial violates the due process clause of the fourteenth amendment and renders his conviction and sentencing void. This right is absolute and no showing of special circumstances is necessary.
Id. at 172.
It should be noted that Crooker was overruled by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The facts in Myers, Crooker, and Reickauer can be distinguished from this case, in that the court did not cause Atterberry's hired counsel to be unprepared as in Myers, Atterberry is not alleging denial of counsel during custodial interrogation as in Crooker, and Atterberry was not forced by a law officer to use a particular attorney or none at all, as in Reickauer. Although Reickauer states that the right to counsel of choice is absolute, that proposition was clearly refuted by Myers and later opinions by this Court, the Federal Circuit Courts, and the United States Supreme Court.
In Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the trial court prevented the defendant from retaining counsel that was retained by the defendant's co-conspirators, because of potential conflict of interest. The defendant appealed his conviction on the ground that the trial court violated his Sixth Amendment right to counsel of choice. The United States Supreme Court illustrated that the right to counsel was not absolute when it opined that:
The Sixth Amendment right to choose one's counsel is circumscribed in several important respects. Regardless of his persuasive powers, an advocate who is not a member of the bar may not represent clients (other than himself) in court. Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant. Nor may a defendant insist on counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government.
Id. at 159, 108 S.Ct. at 1697 (footnote omitted). Justice Marshall reiterated this point in his dissenting opinion by stating that, "The Court acknowledges, as it must, that the Sixth Amendment's guarantee of assistance of counsel comprehends the right to select one's own attorney. The Court also states that, although this constitutional right is not absolute, it mandates a presumption in favor of accepting a criminal defendant's choice of counsel." Id. at 165, 108 S.Ct. at 1700 (Marshall, J., dissenting).
In McCoy v. Cabana, 794 F.2d 177 (5th Cir.1986), the defendant claimed that the trial court denied his right to choice of counsel because the state trial court denied his motion for a continuance the morning the trial was to begin so that he could dismiss his court appointed counsel and retain counsel of his own. In affirming the denial, the court opined that "[a]lthough a defendant has a constitutional right to counsel of choice, that right is not absolute. The denial of a last minute request for a continuance to retain new counsel is within the trial court's discretion." Id. at 180 (citing United States v. Silva, 611 F.2d 78, 79 (5th Cir.1980)).
While it is true that Myers held that the defendant's constitutional right to counsel of choice was violated, this Court first determined if the statute preventing county attorneys from acting against the State would disqualify the county attorney's partners. This Court in Myers, recognized the importance to public policy in not allowing a county attorney to represent the State in one case and a criminal defendant in another. Id. at 699. Therefore, to say that Myers stands for the proposition that the right to counsel of choice is absolute is ungrounded.
*630 In Burnett v. State, 285 So.2d 783 (Miss. 1973), this Court said that "the motion of an indigent prisoner requesting to dismiss his court appointed attorney is addressed in the sound discretion of the trial judge." Id. at 783-84. In Byrd v. State, 522 So.2d 756, 759 (Miss. 1988), the Court held that the defendant was not entitled to a continuance so that he could hire a private attorney instead of being represented by his court appointed attorney. Likewise in Harrison v. State 520 So.2d 1352, 1353 (Miss. 1987), this Court refuted the defendant's assertion that he had the absolute right to discharge his attorney and represent himself and, therefore, he has the right to discharge his appointed counsel and retain another at his own expense. The court in Harrison relied upon Collins v. State 369 So.2d 500 (Miss. 1979) where the defendant's court appointed counsel was not allowed to withdraw, because the defendant had sufficient time after arraignment to obtain counsel and a motion to replace counsel the day of the trial was untimely. It is clear from these cases that the Sixth Amendment does give a criminal defendant a right to choose his counsel, but that right is not absolute.
In this case Atterberry was arraigned July 26, 1991, his trial was set on October 25, 1991, he obtained private counsel on October 30, 1991, filed a motion to withdraw on October 31, 1991, and the motion was heard November 4, 1991 the day of trial. The court told Atterberry that he must inform any retained counsel that the trial had been set, which he did not. The trial court held a hearing to determine which counsel would proceed. Atterberry's hired counsel refused to proceed unless a continuance was granted. The judge then stated that the court appointed counsel would proceed, because the court was not going to grant a continuance. The court allowed the hired counsel to assist and even participate in the trial. In making sure the defendant had adequate counsel, the court was assisting the defendant and not violating his rights. Based on these facts the trial court judge was well within his discretion.

V.
Atterberry's last assertion is that the trial court erred in denying his motion for a continuance. Atterberry claims that the denial prevented him from calling the victim as a witness. Atterberry further claims that the victim would have bolstered his testimony and would have impeached a prosecution witness. Atterberry offered no affidavits or any other showing that the victim had material testimony. At the time of trial the victim was believed to be out of the state and unavailable for trial.
Atterberry cites Hughes v. State, 589 So.2d 112 (Miss. 1991), where this Court reversed a trial court's denial of a defendant's motion for a continuance to allow additional time to prepare. In Hughes, this Court stated that:
In considering whether the lower court has abused its discretion in denying a motion for a continuance, we have said that "where the trial record reveals a statement of facts indicating a lack of fair trial, it becomes the duty of this Court to insure such trial by granting a new trial," especially where the evidence which has been presented leaves considerable doubt that the defendant received a fair trial.
Id. at 113 (quoting Barnes v. State, 249 So.2d 383, 385 (Miss. 1971)).
The facts that lead to the reversal in Hughes are as follows:
1. Crime occurred on July 13, 1991; defendant was indicted October 19, 1991; defendant was served on October 20, 1991; defendant hired private counsel on November 1, 1991; the trial began November 9, 1991 (three weeks after indictment).
2. Defendant's hired counsel was representing defendant's son, whose trial began November 10, 1991.
3. Defendant was "semi-literate" and had trouble relating back to the incident; defendant's counsel talked to three defense witnesses the day before trial for the first time; defendant's counsel talked to the other defense witness the day of trial for the first time; all of the defense witnesses had trouble with relating back to the day of the crime.
*631 4. The defendant's counsel did not interview the state's witnesses because he spent time preparing other aspects of the case (i.e., pleadings, motions, and research); defendant's counsel was a sole practitioner.
5. On November 6, 1989, the defendant filed a motion for an independent analysis to the court, which was granted. During the hearing on the motion the court said to the district attorney, "I will ask that you tell [defense counsel] the name and phone number of the analyst that is commonly used at Mississippi State  his name escapes me at the moment  so that he will at least know who is available to do that... ."; On November 9, 1989, the court heard a motion for a continuance and the district attorney stated that defense counsel had not informed the State as to who its expert was. Defense counsel then argued that the court had instructed the district attorney to provide the name of an expert. The court denied the motion on the ground that it had only suggested that the district attorney provide the name of an expert. Id. at 113-14.
This Court reversed, because based on these facts, the defendant was being penalized for hiring a sole practitioner, who did not have the means to prepare for a trial in such a short amount of time (eight days). In this case, there was over three months between indictment and the beginning of trial, while in Hughes the defendant had only three weeks. Atterberry has not argued any facts similar to those this Court considered in Hughes, because they do not exist. There are no facts argued or present that would have prevented Atterberry from preparing for trial, except the absence of the victim.
Atterberry also cites Barnes, where this Court reversed the denial of a continuance upon the ground that "an attorney [that] has not had sufficient time to prepare for trial is subject to proof and also as to facts as they may appear from that which is known to the trial court." Barnes, 249 So.2d at 384. The proof and facts that were present in Barnes, is that the defendant had summoned witnesses and none of them had been served and there was no official return as to why they had not been served. The witnesses were all eyewitnesses to the incident and this was proven by other testimony. Our case is also distinguishable from Barnes, in that this defendant had not issued any subpoenas, and there is no proof that the victim has material testimony.
The procedure for a motion for a continuance is set out in Miss. Code Ann. § 99-15-29 (1972). It reads:
On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the ... presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done. The court may grant or deny a continuance, in its discretion... . A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom.
The decision to grant or deny a continuance is left to the sound discretion of the trial court. Lambert v. State, 654 So.2d 17, 22 (Miss. 1995); Johnson v. State, 631 So.2d 185, 187 (Miss. 1994). Unless manifest injustice appears to have resulted from the denial of the continuance this Court should not reverse. Lambert, 654 So.2d at 22; Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss. 1993). Atterberry fails to meet the facts in Lambert, where this Court reversed the trial court because of: i) the short time between indictment and trial, ii) the court appointed counsel's previous trial commitments, iii) the failure of the State to supply discovery, iv) and the problems with a multi-count indictment. Id. at 22.
In Lambert, the appellant was arraigned August 15, 1991 and on that day set for trial on August 22, 1991. In this case Atterberry was arraigned July 16, 1991, the case was set for trial on October 25, 1991, to begin November 4, 1991. There are also no discovery violations by the prosecution or any multi-count indictment as in Lambert. Atterberry asserts that he was unable to call a witness as a result of the denial, but he has failed to proffer any evidence of what the witness would have testified to as required by § 99-15-29.
*632 In Pinson v. State, 518 So.2d 1220 (Miss. 1988), this Court affirmed the trial court's denial of a continuance where the defendant had not issued a subpoena for the witness or provided affidavits as to what the testimony would be. In Pinson, the court made available the sheriff to locate the unavailable witness and even issued a subpoena. In our case Atterberry had not issued a subpoena, in fact the prosecution issued a subpoena for the unavailable witness. The trial court did offer Atterberry assistance from officers to locate the witness. The trial court also provided Atterberry with a recess so that he could personally attempt to procure the witness for trial. This motion was heard the first day of trial. Atterberry issued no subpoena, offered no proof of testimony, and offered no proof that he attempted to procure the witness's attendance. Based on these facts the trial court was well in its discretion and we will not disturb its decision.
For the foregoing reasons Atterberry's conviction for the crime of arson is affirmed.
CONVICTION OF FIRST DEGREE ARSON AND SENTENCED AS AN HABITUAL CRIMINAL TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
PRATHER, P.J., and McRAE, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.
DAN M. LEE, C.J., and PITTMAN, J., concur in result only.
SULLIVAN, P.J., not participating.