802 So.2d 157 (2001)
Andrew McCORMICK, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01547-COA.
Court of Appeals of Mississippi.
December 18, 2001.
*158 Scott Watson Weatherly Jr., Gulfport, for Appellant.
Office of the Attorney General by Deirdre McCrory, for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and CHANDLER, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. Andrew McCormick was found guilty by a circuit court jury of possession of at least thirty grams of cocaine. On appeal, McCormick argues that the evidence was insufficient, that his constitutional right to counsel of his own choosing was violated, that the State used its peremptory challenges in a discriminatory manner, that his motion for continuance should have been granted, and that his sentence constitutes cruel and unusual punishment. We find none of these allegations to be valid. Consequently, we affirm.

STATEMENT OF THE FACTS
¶ 2. On July 19, 1999, at approximately 8:20 P.M., two black men entered the Ramada Limited, a hotel located on Highway 90 in Biloxi, Mississippi. Dung Dinh, the hotel's president and manager, stated that the two individuals, who were later identified as Andrew McCormick and Maurice Jackson, looked as if they had been running because both were sweating profusely. Upon entering the hotel, Jackson and McCormick immediately went into the restroom but re-emerged almost immediately. They then sat down in the hotel's breakfast area. Dinh asked them to leave. Instead of complying, they asked for permission *159 to use a phone to call a cab. Dinh told them to use the public phone located in the lobby.
¶ 3. Shortly after this conversation occurred, a black Mercedes arrived at the hotel with three Asian men inside. Jackson and McCormick, seeing the new arrivals before the reverse occurred, ran into the manager's office and locked themselves inside. Two of the individuals from the Mercedes entered the hotel lobby. The manager thought that one of them had a gun under his shirt. One of the men asked Dinh if two black men had recently entered the hotel. Dinh testified at trial that he was afraid of a confrontation and therefore denied seeing two such men. The Asian males returned to their car and appeared to be leaving when Jackson and McCormick emerged from the hotel office. Their pursuers spotted them but before they could re-enter the hotel, Dinh locked the lobby doors and instructed another hotel employee to call the police.
¶ 4. Two eyewitnesses testified that during this time McCormick placed a plastic bag that contained white round objects into his pocket. One of the witnesses heard either McCormick or Jackson state that "this was a drug deal gone bad."
¶ 5. The three men in the Mercedes drove away when hotel president Dinh told them that the police had been contacted. Before the police responded, Jackson and McCormick attempted to leave the premises, but Dinh refused to unlock the doors. When the police arrived, McCormick was seen running into a storage room near Dinh's office. There only briefly, McCormick then re-entered the lobby and was searched by the police. One of the hotel employees, having been told by a guest of McCormick's rush into the storeroom, went into the room and discovered inside a refrigerator a plastic shopping bag containing a white substance. The police were told and took possession of what later proved to be cocaine.
¶ 6. Both Jackson and McCormick were arrested. McCormick was indicted for possession of at least thirty grams of cocaine with intent to distribute. McCormick was found guilty and his appeal to the Supreme Court has been deflected here.

DISCUSSION

I. Denial of continuance and refusal to allow appointed counsel to withdraw
¶ 7. McCormick's indictment was returned in February 2000. A waiver of arraignment was signed by both McCormick and his court appointed counsel in May, with a trial date set of August 14, 2000. On that latter date, McCormick's counsel advised the court that he was not ready to proceed because he had been unable to contact McCormick, who had been released on bail. The court remanded McCormick into custody and set the trial for August 21, 2000.
¶ 8. On August 17, 2000, new counsel filed a motion for continuance. She claimed that McCormick had retained her as counsel and that she did not have sufficient time to prepare an adequate defense. Counsel also maintains that a continuance was needed to secure the presence of an expert witness who would be critical to McCormick's defense. The expert was to be a latent fingerprint examiner. At trial the State made no objection and that expert testimony was admitted. In addition, a continuance was said to be necessary because McCormick needed to secure the presence of two Asian men who were detained in connection with this offense. The State argued, though, that the named witnesses claimed to have no knowledge of *160 the cocaine, and therefore the defense would not be prejudiced by their absence.
¶ 9. The motion for continuance was denied. The trial court stated that the case had been set for trial for months. The court allowed McCormick's retained counsel to participate in the trial if she so desired, while refusing to allow court-appointed attorney to withdraw.
¶ 10. In an analogous precedent, the defendant had appointed counsel but shortly before trial retained a different counsel. Atterberry v. State, 667 So.2d 622, 630 (Miss.1995). The new counsel requested a continuance, but the motion was denied. At that point, the retained counsel refused to proceed. The trial judge's response was to order court appointed counsel to go forward and represent the defendant. As here, the trial court also gave retained counsel the option of assisting in the trial. The Supreme Court stated that based on these facts the trial court acted within its discretion. Id. A defendant has an absolute right to counsel, but the right to choose counsel is not absolute. It is a right that must not be abused or manipulated in such a way as to "thwart the progress of a trial." Ladnier v. State, 273 So.2d 169, 173 (Miss.1973).
¶ 11. The most noteworthy fact about McCormick's motion for continuance is that although McCormick alleges a continuance was necessary to obtain the testimony of subpoenaed witnesses, he offered no affidavit stating "the facts which he expects to prove by his absent witness or documents that the court may judge the materiality of such facts," as required by statute. Miss.Code Ann. § 99-15-29 (Rev. 2000). Therefore, the effect of the missing witnesses on the trial is the rankest speculation.
¶ 12. McCormick relies on two precedents to demonstrate reversible error. In one, the defendant was required to stand trial three weeks after being indicted, giving retained counsel only eight days to prepare a defense. Hughes v. State, 589 So.2d 112, 113 (Miss.1991). Not only did counsel have eight days to prepare for one trial, this same attorney had to represent Hughes's son in trial the next day. Id. at 114. Thus, one attorney had two different trials with less than ten days to prepare for both. McCormick had more than five months after his indictment to become prepared, including to retain counsel and to have any witnesses served with a subpoena who were necessary to his defense. In the other precedent on which McCormick relies, the defense had timely summoned several witnesses, "and no official return had been made as to why the witnesses" had not been served. Barnes v. State, 249 So.2d 383, 384 (Miss.1971). That defect does not exist as to McCormick.
¶ 13. To be distinguished are the requirements for a motion for continuance based on lack of reasonable time to prepare and a continuance requested because of the absence of a witness:
[t]he application for continuance upon the ground that the attorney for the defendant has not had a reasonable time to prepare for trial is different from an application for continuance on the ground that there is an absent witness. When a witness is absent the movant must continue his effort to obtain the witness.... On the other hand, a motion for continuance upon the ground that an attorney has not had sufficient time to prepare for trial is subject to proof and also as to facts as they may appear from that which is known from the trial court.
Id.
¶ 14. The argument of McCormick's retained counsel that she needed more time to prepare was rejected by the trial judge. "[I]t is largely within the *161 sound judicial discretion of the trial judge as to whether or not the defendant's attorney has had ample time to prepare for trial." Id. at 384-85.

II. Batson Violation
¶ 15. McCormick's next assertion of error concerns the State's allegedly purposeful exclusion of black jurors and the trial judge's failure to require the State to explain the reason for the peremptory strikes that it exercised. It is improper for either the prosecutor or the defendant to use peremptory challenges on the basis of race. Once a prima facie case of discriminatory use has been made, the party exercising the challenges must then explain the reason for each one. Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). At McCormick's trial, the trial court found that no prima facie case of discrimination was ever made.
¶ 16. McCormick argues that a prima facie case was made because the State attempted to strike two black veniremen for cause, which the trial court denied, and subsequently struck the same potential jurors using peremptory challenges. We find a prima facie case that the State did not want those two jurors, but that does not prove race bias. The trial court noted that the State had utilized only two of its six peremptory strikes and had accepted three black jurors.
¶ 17. We agree that the State's acceptance of one black juror does not necessarily block the inference of discrimination if a significant number of other jurors of that race were struck. The "fact that the prosecution used all of the peremptory strikes necessary (five) to remove all but one black person from the jury satisfies the requirement of raising an inference of racial discrimination." Conerly v. State, 544 So.2d 1370, 1372 (Miss.1989). The trial court made a reasonable fact finding at McCormick's trial, despite Connerly, that striking only two of five prospective black jurors does not create a prima facie case of discrimination even if striking five of six does.

III. Sufficiency of Evidence
¶ 18. McCormick argues that there was insufficient evidence to convict. We review the evidence in the record with deference for the jury's finding of guilt. We will view all the evidence from the perspective that favors the verdict, making all reasonable evidentiary inferences and credibility choices that are consistent with guilt. Only when "the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," is the evidence insufficient to sustain the judgment of conviction. Bishop v. State, 771 So.2d 397, 402-03 (Miss.Ct.App.2000).
¶ 19. McCormick's guilt is supported by eyewitness testimony that he placed a bag containing a white substance in his pants shortly before the police arrived at the Ramada. A hotel patron testified that he heard either McCormick or his compatriot say that this was a drug deal that had gone bad. An employee of the hotel saw McCormick run into the hotel storage room, only to emerge a short time later. It was in that storage room that the cocaine was found in bags similar to the ones McCormick was seen placing in his pants minutes earlier. This is sufficient to convict.

IV. Constitutionality of Sentence
¶ 20. McCormick was sentenced to serve twenty years in the penitentiary without the prospect of probation or parole. He asserts that this is disproportionate to the crime and is cruel and unusual punishment. The Supreme Court has held that the defense must raise the proportionality issue in the trial court, or else the *162 matter is procedurally barred. Taylor v. State, 452 So.2d 441, 450 (Miss.1984). Regardless, "the imposition of a sentence is within the discretion of the trial court and this Court will not review the sentence, if it is within the limits prescribed by statute." Reed v. State, 536 So.2d 1336, 1339 (Miss.1988).
¶ 21. McCormick could have been sentenced to sixty years in prison with a fine of two million dollars. The trial court acted within the limits prescribed by statute. We find no error.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF POSSESSION OF THIRTY GRAMS OR MORE OF COCAINE AND SENTENCE AS AN HABITUAL OFFENDER OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.