KING, P.J.,
for the Court.
¶ 1. Marvin Fields was convicted of two counts of burglary by the Grenada County Circuit Court and sentenced to serve a term of seven years on each count in the custody of the Mississippi Department of Corrections. The sentences were to be served concurrently. Aggrieved by his convictions and sentences, Fields appeals, raising the following issues as error which we quote verbatim:
I. The trial court erred when it compelled Mr. Fields to proceed pro se at trial and failed to follow the requirements of Faretta v. California in violation of his right to counsel under the Mississippi and United States Constitutions.
II. The trial court erred when it failed to sustain Mr. Fields’s motion to set aside the jury’s verdict (J.N.O.V.) and motion for a new trial as contrary to the overwhelming weight of the evidence.
FACTS
¶ 2. During the early morning of December 21, 1998, Jimmy Brock, manager of Abel’s Used Cars, received a call indicat *483 ing that someone had broken a window out of a car on the car lot.
¶ 3. Officer Adam Eubanks of the Grenada Police Department indicated that he saw two males “standing across the Scott parking lot behind the cars at Abel’s Used Cars,” at 4:30 a.m. When he approached the males, they began to run in different directions. Eubanks then approached Fields, who was walking at this time, and asked him “where he was headed this early in the morning.”
¶ 4. According to Eubanks, Fields indicated that his name was “Eric Winston” and he had just come into town on a Greyhound bus. Eubanks noticed some wires hanging out of Fields’ jacket pocket. When Eubanks asked Fields about the wires, Fields stated that “it was an equalizer that was in his car that broke down on him.” Fields indicated that he did not have any identification with him nor did he have a bus ticket. Eubanks then detained Fields based upon his suspicion that a burglary might have been committed.
¶ 5. At trial, Eubanks testified that Fields was the same person who indicated that his name was “Eric Winston,” when he was stopped for questioning.
¶ 6. On August 6, 2001, Fields had dismissed his attorney. At the beginning of trial on August 7, 2001, Fields indicated to the court that he was not ready to proceed because he did not have an attorney, and requested a continuance to hire an attorney. The trial judge denied the motion for a continuance.
¶ 7. The trial judge then advised Fields that he had a right to have his present counsel represent him or he could represent himself. Fields stated that he did not want his present counsel nor did he want to represent himself. The trial judge stated that unless Fields could hire an attorney within “the next five minutes,” he should get ready for trial. The trial judge also indicated that he would allow Fields’ present counsel to assist him as hybrid counsel if he decided to proceed pro se. Again, Fields indicated that he did not want this particular attorney’s assistance. Fields’ attorney made an ore terms request to be excused which was granted. The trial judge then proceeded with the trial.
¶ 8. The trial judge explained the voir dire examination to Fields, after which Fields participated in the process. After a jury panel had been selected, Fields indicated that he needed time to review the discovery materials. The trial judge allowed Fields approximately two hours to review the materials.
¶ 9. Upon returning to the courtroom after the break, the trial judge noted that Fields had not returned to the courtroom nor told anyone where he would be. The trial judge asked Chief Deputy Johnny Grantham to attempt to locate Fields. Deputy Grantham indicated that the officers were unable to locate Fields.
¶ 10. At the conclusion of the trial, the trial judge granted a directed verdict on count two in favor of Fields and allowed counts one and three to go to the jury. The jury found Fields guilty of the two counts of burglary. Sentencing was deferred until Fields was apprehended. He was taken into custody in Tennessee and extradited to Mississippi. He was then incarcerated in Grenada County.
ISSUES AND ANALYSIS
I.
Whether the trial court erred when it compelled Mr. Fields to proceed pro se at trial and failed to follow the requirements of Faretta v. California in violation of his right to counsel under the Mississippi and United States Constitutions.
¶ 11. Fields claims that his right to counsel pursuant to the Mississippi Con *484 stitution and the Sixth Amendment of the United States Constitution was violated when he was compelled to proceed pro se at trial.
¶ 12. The Mississippi Constitution Article 3, Section 26 and the Sixth Amendment of the United States Constitution grant a defendant the right to be heard by himself or counsel or both.
¶ 13. “Though the right to counsel is absolute, the right to counsel of choice is not absolute.” Atterberry v. State, 667 So.2d 622, 630 (Miss.1995). This right may not be used to thwart the progress of a trial. Ladnier v. State, 273 So.2d 169, 173 (Miss.1973). While an indigent is entitled to competent counsel to defend him, he is not entitled to court-appointed counsel of his own choosing. Taylor v. State, 744 So.2d 306(¶ 34) (Miss.Ct.App.1999). “The denial of a last minute continuance to retain new counsel is within the trial court’s discretion.” Henry v. State, 816 So.2d 443(¶ 5) (Miss.Ct.App.2002).
¶ 14. On the day of trial, Fields rejected the service of his then attorney, and requested a continuance to hire an attorney. Given the breakdown in communication, Fields’ attorney was allowed to withdraw. The trial judge denied Fields’ request for a continuance, indicating that Fields had ample opportunity to hire counsel prior to trial. The trial judge advised Fields of the alternatives then available regarding his right to counsel. The trial judge advised Fields of his right to continue with court-appointed counsel. The trial court advised Fields of his right to “hybrid representation,” where court-appointed counsel would be present to assist him. The trial court advised Fields of his right to proceed pro se. Fields indicated that neither of these alternatives was acceptable.
¶ 15. Upon Fields’ rejection of the alternatives given by the trial court, the trial judge explained to him the voir dire procedure and began to prepare for trial. Fields participated in jury selection and was given approximately two hours to examine discovery materials. When court reconvened, Fields could not be located in the courthouse. The trial judge indicated Fields’ absence on the record and allowed the State to proceed with the trial. The supreme court has held that when a defendant enters an appearance in a trial court at the commencement of trial, he may be tried in absentia if he thereafter fails to attend the proceedings. Poe v. State, 739 So.2d 405(¶ 16) (Miss.Ct.App.1999).
¶ 16. Fields argues that under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the trial court could not force him to proceed with court-appointed counsel where he expressed a desire to represent himself. It is important to note that Fields was not forced to proceed with court-appointed counsel.
¶ 17. The trial court is vested with reasonable latitude in docket management and granting of continuances. Williams v. State, 751 So.2d 1137(¶ 8) (Miss.Ct.App.1999). The right of a defendant to obtain a continuance for the purpose of seeking counsel of his choosing must be considered in light of the court’s right to manage its docket. Id.
¶ 18. Since Fields did not have the resources to obtain an attorney, and right before trial rejected the services of an appointed attorney, who was familiar with the case, and had previously obtained a mistrial on one of the charges, the trial court was not obligated to grant a continuance and appoint new counsel. Henry, 816 So.2d 443 at (¶ 5).
¶ 19. This Court finds that the trial court did not abuse its discretion in denying Fields’ request for a continuance to *485 obtain other counsel nor did it violate Fields’ right to counsel. Davis v. State, 811 So.2d 346(¶ 7) (Miss.Ct.App.2001).
n.
Whether the trial court erred when it failed to sustain Mr. Fields’s motion to set aside the jury’s verdict (J.N.O.Y.) and motion for a new trial as contrary to the overwhelming weight of the evidence.
¶ 20. Fields argues that there was insufficient evidence to support the trial court’s denial of his motion for JNOV. He further claims that the verdict was against the overwhelming weight of the evidence.
¶ 21. It is a well-established precedent that the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The credible evidence consistent with Fields’ guilt must be accepted as true. Id. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id.
¶ 22. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. Id. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Id.
¶23. Fields alleges that the evidence was insufficient because there was nothing presented which suggested that he attempted to conceal “his possession of the goods allegedly stolen from the automobiles,” and he provided an explanation as to why he had an equalizer in his pocket.
¶ 24. The State presented evidence through the testimony of Officer Eubanks who stated that (1) he saw two black males near the Cadillac at Abel’s Used Cars that appeared to have a glass window broken out, (2) when he approached Fields to question him, he noticed wires hanging from Fields’ pocket, and (3) Fields stated that he had just gotten off of a Greyhound bus, borrowed a car from a friend and the car had broken down so he took the equalizer out of the car to make sure that it would not get stolen.
¶ 25. There was testimony presented by the State through David Hill, manager of Cannon’s Used Cars, who testified that a Plymouth Acclaim and a Dodge Monaco from the lot of Cannon’s Used Cars in Grenada had been broken into before he came to work on December 21, 1998, and the equalizer was missing from the Plymouth Acclaim. Mr. Hill identified the equalizer that was in Fields’ possession as the one which came from the dashboard of the Plymouth Acclaim on his lot.
¶ 26. Fields asserts that due to the inconsistency in the testimony at trial, the overwhelming weight of the evidence does not support a conviction in this case. He claims that Detective Jimmy Stauddy of the Grenada Police Department testified that when he inspected the Cadillac, “you could tell somebody had pilfered through it.” However, Jimmy Brock, manager of Abel’s Used Cars, testified that he did not see anything “out of the ordinary” upon looking into the Cadillac. Inconsistencies or contradictions in testimony are clearly in the jury’s province, and we refuse to reverse on such grounds. James v. State, 756 So.2d 850(¶ 4) (Miss.Ct.App.2000). It is the duty of the jurors to resolve conflicts in the testimony presented. Id.
¶ 27. As to Fields’ argument regarding the weight of the evidence, he claims that the evidence presented by the State which contained significant inconsistencies in tes *486 timony does not support a conviction. This Court finds that based on the evidence presented a jury could find Fields guilty.
¶ 28. Therefore, we find no error in the trial court’s decision.
¶ 29. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I AUTOMOBILE BURGLARY AND SENTENCE OF SEVEN YEARS; AND COUNT III AUTOMOBILE BURGLARY AND SENTENCE OF SEVEN YEARS TO BE SERVED CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO GRENADA COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.