MYERS, P.J.,
for the Court.
¶ 1. Richard Sturkey was convicted of the sale ■ of cocaine and sentenced as an habitual offender to a term of sixty years in the custody of the Mississippi Department of Corrections in the Circuit Court of Scott County. Aggrieved by this judgment, he appeals to this Court raising the following three issues:
I. THE TRIAL COURT ERRED IN DENYING RICHARD STURKEY’S REQUEST THAT HE BE REPRESENTED BY RETAINED COUNSEL OF HIS CHOICE.
II. THE TRIAL COURT ERRED IN SUSTAINING THE PROSECUTOR’S HEARSAY OBJECTION.
III. THE TRIAL COURT ERRED IN OVERRULING RICHARD STUR-KEY’S OBJECTION TO THE PROSECUTOR’S CLOSING ARGUMENT COMMENT ABOUT STURKEY FAILING TO CALL A WITNESS.
FACTS
¶ 2. Agent Rodney Williams of the Mississippi Bureau of Narcotics attended a “pre-buy meeting” on April 18, 2001, with other agents of MBN and a confidential informant. Following a debriefing, a search for contraband, and being supplied with state funds, the informant telephoned Richard Sturkey. This telephone contact was for the purpose of determining whether Sturkey was at his residence and if he had any drugs to sell. Following the tele *792 phone conversation, Williams and the informant went to Starkey’s residence. These two were followed by surveillance officers who stayed a distance behind to observe.
¶ 3. Agent Williams and the informant approached Starkey’s residence where' four women sat on the front porch. The informant asked the women, “Is Rickey at home?’-1 One of the women replied that he was inside. The two men then went inside where they found Starkey in the kitchen, “cooking dope in the microwave.” The informant and Starkey had a conversation concerning the price of an ounce of cocaine. Ultimately a price of $460 was agreed upon for four “eight balls of crack cocaine.” Williams made the purchase of the crack cocaine. After the purchase was concluded, Williams and the informant departed and attended a post-buy meeting. The alleged crack cocaine was turned over to the case agent, Claire Gremillion. The alleged crack cocaine was tested at the state crime lab and determined to be in fact crack cocaine.
¶ 4. Starkey was arrested and indicted on October 4, 2001, for the sale of cocaine as a second drug offender, and habitual offender. Following a waiver of his right to a speedy trial, Starkey was tried and convicted on October 15, 2003, and sentenced to a term of sixty years in the custody of the Mississippi Department of Corrections, without the benefit of parole, suspension or reduction of sentence.
DISCUSSION
I. THE TRIAL COURT ERRED IN DENYING RICHARD STURKEY’S REQUEST THAT HE BE REPRESENTED BY RETAINED COUNSEL OF HIS CHOICE.
¶ 5. Starkey as his first issue on appeal asserts that his right to be represented by his choice for retained counsel has been violated. Starkey had employed Kevin Camp as his attorney. Camp had rendered various services including discovery when his military reserve unit was called to active duty and sent to Iraq in January 2003. Camp delivered all his files to Jeanine Carafello who was Starkey’s trial counsel. The trial was originally scheduled for October 14, 2003, but due to the illness of Carafello, the trial was postponed one day until October 15. On the morning of trial, Carafello informed the court, in chambers, that Starkey had advised her that he wished to discharge her and hire new counsel.
¶ 6. The trial court held a hearing on the record where both Starkey and Carafello were questioned concerning the preparation for trial. Starkey made general allegations concerning his reasons for seeking another counsel. The exchange between Judge Cotten and Starkey was as follows:
Court: I’ll let you now make a statement into the’ record and state why you have this dissatisfaction and also, you might state why you, have only at this eleventh hour, come to this decision. Go ahead.
Starkey: Well, me and Kevin — me and Kevin — we—we—we socialized on my case way before I met her, you know, and I don’t feel comfortable with another attorney, as far as right at the moment because I don’t too much know her like I know Kevin, and she — she—she probably can represent me, but I don’t feel comfortable right now and — ‘cause me and Kevin had a bond, and my life is at jeopardy right now.
Court: All right. When did you first make this announcement known?
Starkey: I’ve been — I’ve been waiting to say it, but I just — I was just going through — through the motions and the process.
*793 Following this exchange the trial court requested that Carafello respond. Her response is as follows:
Carafello: Yes, your honor. Prior to Mr. Camp being deployed January of 2003, we obviously went over all of his active case files and I was familiarized at the first point — right before he was deployed — as to Mr Sturkey’s case.
And there is voluminous discovery in that file which I’m very familiar with. I’ve met with Mr. Sturkey on several occasions — the latest being Monday afternoon, and even on Monday, we went over the discovery and the police reports and whatnot, and as far as being prepared for the trial, obviously, I was prepared to go forward yesterday, and I am prepared to go forward today.
I’m concerned if Mr. Sturkey is not comfortable with that in light of what he’s facing — which would be 60 years as a habitual, but as far as being prepared and being apprised of the file, then I believe that I’ve done that above and beyond.
¶ 7. While a defendant does have the right to counsel of his choice, this right is not absolute. Atterberry v. State, 667 So.2d 622, 628 (Miss.1995). “The denial of a last minute continuance to retain new counsel is within the trial court’s discretion.” Id. at 629 (citing United States v. Silva, 611 F.2d 78, 79 (5th Cir.1980)). In the case sub judice, the trial court applied the two prong test from Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court then made a finding on the record as follows:
I find that the case having been— begun in October of 2001 and the defendant’s original counsel being Kevin Camp being activated — perhaps more than a year now to the Kuwait desert action — Desert Storm or whatever that action is — and that the co-counsel is Jeanine Carafello — it’s not in the record that she’s co-counsel, but the Court takes judicial notice that there have been at least five, perhaps six — counting this term- — -six terms of court that have passed since the original indictment— and Ms. Carafello has been the attorney appearing of record on behalf of the Defendant and continuances have been granted until this date — and there’s nothing in the record reflecting anything about dissatisfaction.
The Court hearing from the Defendant today about why the dissatisfaction — there’s nothing of substance, that he has said under the standard of Strickland versus Washington that would reveal to me that this attorney has been guilty of any dereliction of duty. It’s just that the Defendant would have felt more comfortable with his co-counsel.
Ms Carafello has tried cases in this court before, in this district. I’m aware of her presence and her abilities, and I know of nothing that would indicate she has not done all that she should have done under the law to represent the defendant.
So I find that the request for this attorney to be discharged, and for the Defendant to have further time to employ an attorney is — is denied. So that’s where we are right now.
¶ 8. As stated in Harrison v. State, 520 So.2d 1352, 1353 (Miss.1987), “if the [defendant] wanted other counsel, he had abundant time and should have arranged therefor in advance of the day the trial was begun. The request was untimely. Following the same reasoning, [defendant’s] motion for a continuance, if motion it was, was not worthy of favorable consideration.” It is clear from.the record that there was adequate time between Camp’s *794 activation to Iraq and trial for Sturkey to obtain other counsel. Sturkey even indicated that he had been thinking about changing defense counsel, but had just been going through the motions. This issue is without merit.
II. THE TRIAL COURT ERRED IN SUSTAINING THE PROSECUTOR’S HEARSAY OBJECTION.
¶ 9. As his second issue on appeal, Sturkey asserts that the trial court erred in sustaining the State’s objection in the following exchange between Carafello and Williams.
Carafello: How long do you think you were in that residence?
Williams: Approximately about ten minutes or so.
Carafello: Ten minutes — okay. And this confidential informant was also in there with you; is that right?
Williams: That’s correct.
Carafello: But his statement is that he didn’t see anything; isn’t that right?
Williams: That’s correct.
Carafello: As it’s your own paid informant who stated, “I didn’t see anything. I had my back turned.” Is that right?
Williams: I—
State: I object to her cross-examining this witness about somebody else’s statement.
Court: Sustained; sustained.
Carafello: I’ll move along, Your Honor.
¶ 10. Sturkey contends that the statement was offered not to prove that the confidential informant’s back was turned, and that, therefore, he did not see the transaction, but that, although he had been in the room when the transaction had occurred, he later stated that he did not see it. The State contends that the objection was properly sustained on grounds that it had been asked and answered.
¶ 11. “The admission or suppression of evidence is within the sound discretion of the trial judge and will not be reversed unless there is an abuse of that discretion. We will only reverse under that standard if the admission of the evidence results in prejudice and harm to the opposing party, or if it adversely affects a substantial right of the party.” Brown v. State, 890 So.2d 901, 914(¶ 39) (Miss.2004) (citations omitted).
¶ 12. “Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” M.R.E. 801(c). It is hornbook law that “[i]f a statement is offered to prove the fact that it was made, and not to prove the truth of its substance, it is not hearsay.” Steven J. Allen, Evidence, in 4 Ency. of Miss. Law § 34:66 (Jeffrey Jackson & Mary Miller eds. 2001); see Hall v. State, 691 So.2d 415, 420 (Miss.1997) (statement not hearsay when not offered for the truth of the matter asserted, but to impeach); Regency Nissan, Inc. v. Jenkins, 678 So.2d 95, 100 (Miss.1995) (mileage on oil sticker not offered to prove actual mileage of car, but to show knowledge of car dealership); Moody v. RPM Pizza, Inc., 659 So.2d 877, 885 (Miss.1995) (statements allowable when not for the truth of the matter asserted).
¶ 13. The objection offered by the assistant district attorney was “I object to her cross-examining this witness about somebody else’s statement.” This was an objection on the grounds of hearsay. The testimony was solicited from Williams concerning the statement made by the paid informant. This testimony was offered to prove that the informant had his back turned at the time of the transaction. At this point in the testimony, Carafello was attempting to prove that the informant had not seen the transaction take place be *795 tween Williams and Sturkey. Upon the trial court sustaining the objection on hearsay grounds, Carafello moved on and did not point the court to any reason to allow the testimony.
¶ 14. The objection was properly sustained by the trial court on the grounds of hearsay. This issue is without merit.
III. THE TRIAL COURT ERRED IN OVERRULING RICHARD STUR-KEY’S OBJECTION TO THE PROSECUTOR’S CLOSING ARGUMENT COMMENT ABOUT STURKEY FAILING TO CALL A WITNESS.
¶ 15. Sturkey’s third and final issue on appeal involves the overruling of an objection during the State’s closing argument. Sturkey argued that on the day of the cocaine sale he had taken his automobile to the repair shop. A receipt was introduced showing Sturkey’s name, the time the automobile arrived at the shop, and the time that Sturkey retrieved the automobile. The assistant district attorney had argued that the receipt from the automobile repair shop looked suspicious, in that it appeared to have “at least three different kinds of handwriting on here.” He then asserted, “What they should have done is get Mr. James Harper or the owner of James’ Auto Repair to verify this receipt.” Caraf-ello interposed an objection without offering any specific grounds, which was overruled.
¶ 16. The supreme court has stated that objections must be made with specificity in order to be preserved for appeal.
Counsel must make specific objections in order to preserve a question for appellate review. This Court has said many times that general objections will not suffice. Objections to the admissibility of evidence must specifically state the grounds; otherwise, the objection is waived. E.g., Parker v. State, 367 So.2d 456, 457 (Miss.1979); Lay v. State, 310 So.2d 908, 912 (Miss.1975); Norman v. State, 302 So.2d 254, 259 (Miss.1974); Stringer v. State, 279 So.2d 156, 159 (Miss.1973).
As considered in Oates v. State, 421 So.2d 1025, 1030 (Miss.1982), there are three basic considerations which underlie the rule requiring specific objections. It avoids costly new trials. Boring v. State, 253 So.2d 251, 253 (Miss.1971). It allows the offering party an opportunity to obviate the objection. Heard v. State, 59 Miss. 545 (1882). Lastly, a trial court is not put in error unless it had an opportunity to pass o.n the question. Boutwell v. State, 165 Miss. 16, 143 So. 479, 482 (1932). These rules apply with equal force in the instant case....
Seeling v. State, 844 So.2d 439, 445 (¶¶ 17-18) (Miss.2003). This issue is with out merit.
CONCLUSION
¶ 17. Finding that the three issues presented in this appeal are without merit, we affirm the judgment of the Circuit Court of Scott County.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF CONVICTION OF THE SALE OF COCAINE AND SENTENCE OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.