CARLTON, J.,
for the Court:
¶ 1. Dwayne Boyd was convicted of the sale of marijuana, greater than thirty grams but less than one kilogram, within 1,500 feet of a school or within 1,000 feet of the real property of a school. The Madison County Circuit Court sentenced Boyd as a subsequent drug offender to 120 years in the custody of the Mississippi Department of Corrections (MDOC), with sixty years to serve and five years of supervised post-release supervision.
¶ 2. On appeal, Boyd raises the following assignments of error: whether (1) the trial court abused its discretion in denying his request for a continuance; (2) the trial court committed plain error in, among other things, denying this request; and (3) his sentence violated the Eighth Amendment. Finding no error, we affirm.
FACTS
¶ 3. The charges against Boyd stem from an undercover operation in Madison County, Mississippi. On October 27, 2009, Lieutenant Tommy Jones of the Madison County Sheriffs Department’s Narcotics Division, used a confidential informant (“Cl”) to purchase more than thirty grams of marijuana from Boyd at a house in Madison County. Prior to the purchase of the narcotics from Boyd, the Cl and his vehicle were searched, and Lieutenant Jones gave the Cl $200 for the drug purchase. A camera and a bodywire transmitter were secreted upon the Cl’s person, and the transaction was videotaped and shown to the jury during trial.
¶ 4. At trial, five witnesses testified during the State’s case-in-chief, including Lieutenant Jones, the Cl, and Chancey Bass, a lab technician with the Mississippi Crime Laboratory. The Cl testified that, during the drug transaction, Boyd pulled two ziploc bags containing marijuana from his pocket and threw them across the counter to him. The Cl stated that he grabbed the bags and paid Boyd $200. The Cl also made a positive in-court identification of Boyd as the person who sold him the marijuana. Bass, who was accepted as an expert in the field of forensic science specializing in drug identification, testified that she had identified the substance in question as 35.5 grams of marijuana. The defense rested its case without calling any witnesses or presenting any evidence.
¶ 5. The jury found Boyd guilty of selling greater than thirty grams but less than one kilogram of marijuana, a Schedule I controlled substance, within 1,500 feet of a building or outbuilding of Canton Alternative School in Madison, Mississippi, or within 1,000 feet of the real property of Canton Alternative School. The trial court deferred sentencing until the following morning, when the court granted the State’s motion to amend the indictment to charge Boyd as a subsequent drug offender under Mississippi Code Annotated section 41-29-147 (Rev. 2009).[1] The trial *3 court then sentenced Boyd to 120 years in the custody of the MDOC, with sixty years to serve and five years of supervised post-release supervision. Boyd now appeals.
DISCUSSION
I. MOTION FOR A CONTINUANCE[2]
¶ 6. During pretrial matters conducted in the trial court on the morning of trial, Boyd released his privately retained attorney, Wesley T. Evans, and requested a continuance. The trial court allowed Boyd to release Evans but denied Boyd’s ore tenus motion for a continuance. The trial court then offered Boyd the services of a stand-by attorney, Bentley Conner, the chief public defender in Madison County, who was physically present inside the courtroom at that time. Boyd refused Conner’s services. Boyd, by releasing Evans, the attorney he had hired prior to trial, and by later declining the services of Conner as armchair counsel offered by the court, was deemed by the trial judge to have elected to represent himself. In making this determination, the trial judge considered Rule 8.05 of the Uniform Rules of Circuit and County Court. The following exchange occurred between Boyd and the trial judge:
COURT: In accordance with the Uniform Circuit and County Court Rules, Rule Number 8.05, I’m required ... to ... [determine if the [defendant knowingly and voluntarily desires to act as his own attorney.
And Mr. Boyd is here. Mr. Evans was here. Mr. Boyd paid him a fee to represent him. He has discharged Mr. Evans this morning. This case has been set for trial for quite a while. Mr. Evans is willing to go forward and try the case on Mr. Boyd’s behalf. Mr. Boyd does not want him to do so. Now, I’ve also offered Mr. Boyd the services of Mr. Conner as armchair counsel, or I would think that Mr. Conner, if Mr. Boyd qualifies as a public defender appointment, could sit in with him and try the case as a public defender.
Mr. Boyd, you don’t want any of that, do you?
BOYD: No, sir.
COURT: Okay. And you want to act as your own attorney?
BOYD: Not really.
COURT: Well, your case is set for trial today and you have known it for several months. Now, it’s going forward[,] so the question is: Do you want to act as your own attorney or do you want to—
BOYD: I don’t have any other choice.
COURT: All right. Now, you have the right to an attorney. If you can’t afford, one, I’ll appoint one, which I have offered to do. You’ve got the right to conduct your defense[,] and you can let the attorney do whatever you want them to do, if anything, in the case. The rules will not be relaxed for evidence or procedure or protocol. You will be bound and have to conduct yourself the same as an attorney. All rules will apply to you. These are not simple rules. They are complicated[,] and you’re going to be somewhat hampered by not knowing these rules unless you have an attorney to advise you.
Now when you proceed pro se, it will increase the likelihood of an unfavora *4 ble outcome for you. Do you understand these issues?
BOYD: Yes, sir.
COURT: Do you still decline the appointment of an attorney?
BOYD: Yes, sir. Because he cannot— he cannot defend me. He don’t know anything about the case. There’s no one can [sic] defend me but my lawyer that’s with, you know, accurate status [sic] and there’s not one here.
COURT: Mr. Evans is here.
BOYD: He’s not. Trust me.
COURT: He’s here.
BOYD: Oh, he gone be here, but he’s not representing me.
COURT: Okay. Well, that’s your decision.
All right. I guess we will not need your services, Mr. Conner.
CONNER: Thank you, your Honor.
[[Image here]]
COURT: We have talked with Mr. Conner, and he is on standby. Mr. Boyd, at any time you feel like you need to talk to an attorney, all you have to do is tell me that[,] and I’ll send for Mr. Conner. He’s on standby[,] and he will immediately come to this courtroom and ... be able to advise you in any manner ... [on] which you may seek advice.
The record shows that Boyd failed to meet with his attorney prior to trial to view the video recording of the drug transaction, despite his attorney’s requests. The record also reflects that the State notified Boyd during the pretrial proceedings of its intention to amend the indictment to reflect his status as a subsequent drug offender. During the pretrial proceedings, the State offered Boyd a plea deal and explained that if Boyd accepted the plea, the State would not pursue subsequent-offender status. Boyd, however, rejected the plea offered by the State and proceeded to trial.
¶ 7. Boyd argues that the trial court’s denial of his motion for a continuance deprived him of the right to a fair trial, and that the trial court erred in concluding that he voluntarily chose to represent himself. Boyd acknowledges that he failed to file a written motion for a continuance; thus, he alleges that the trial court’s denial of his motion for a continuance constitutes plain error. Boyd also argues that under the plain-error doctrine a manifest injustice occurred by: (1) the State’s advantage of undisclosed information regarding questions to the jury pool the day before Boyd released his retained counsel and requested a motion for a continuance; (2) conflicting testimony presented at trial without objection; (3) lack of objections to the State’s voir dire that he claims would have been made by any reasonable attorney; (4) his lack of knowledge of procedures such as voir dire; (5) two exchanges that occurred with potential jurors during voir dire[3]; and (6) the Cl’s preexisting relationship with the non-defendant owner of the house where the controlled purchase of marijuana occurred. After reviewing the *5 record, we find no merit to Boyd’s allegations.
¶8. “The Mississippi Constitution Article 3, Section 26 and the Sixth Amendment of the United States Constitution grant a defendant the right to be heard by himself or counsel or both.” Fields v. State, 879 So.2d 481, 484 (¶ 12) (Miss.Ct.App.2004). “While a defendant does have the right to counsel of his choice, this right is not absolute.” Sturkey v. State, 946 So.2d 790, 793 (¶ 7) (Miss.Ct. App.2006) (citing Atterberry v. State, 667 So.2d 622, 628 (Miss.1995)). “This right may not be used to thwart the progress of a trial.” Fields, 879 So.2d at 484 (¶ 13) (citing Ladnier v. State, 273 So.2d 169, 173 (Miss.1973)). A denial of a last-minute continuance for the defendant to retain new counsel falls within the discretion of the trial court. Id. “This court will not reverse a trial court’s decision to deny a motion for continuance unless it appears to have resulted in ‘manifest injustice.’ ” Ousley v. State, 984 So.2d 996, 999 (¶7) (Miss.Ct.App.2007). “The burden of showing manifest injustice is not satisfied by mere conclusory allegations but by concrete facts that show particular prejudice to the defendant.” Id.
¶ 9. As stated in Harrison v. State, 520 So.2d 1352, 1353 (Miss.1987), “[I]f [the] defendant wanted other counsel, he had abundant time and should have arranged therefor in advance of the day the trial was begun. The request was untimely. Following the same reasoning, [the] defendant’s motion for a continuance, if motion it was, was not worthy of favorable consideration.” [4] In this case, the record similarly shows that Boyd had ample time to obtain other counsel. Trial was conducted on October 6, 2010. On May 20, 2010, the case was set for trial on October 5, 2010. Boyd’s retained attorney, Evans, entered his appearance on September 22, 2010. Evans subsequently received discovery on or about September 29, 2010. The morning of trial, Evans testified to his pretrial preparation stating, in pertinent part:
I think I was hired at the last-at the last-minute. Abraham Rowe was initially the attorney appointed. He decided to come to me and got me at the last[-] minute. I found out when the trial date was. And, you know, discovery really consists of two pages, the confidential buy and the lab report, and I went over that orally with him when I got the information.
Also, I looked at the videotape on my own time, I went down to the Sheriffs Department, and I’ve been trying to get him for the past days to just watch the videotape so he could make an informed decision.
¶ 10. “The trial court is vested with reasonable latitude in docket management and granting of continuances. The right of a defendant to obtain a continuance for the purpose of seeking counsel of his choosing must be considered in light of the court’s right to manage its docket.” Fields, 879 So.2d at 484 (¶ 17) (internal citation omitted). This Court finds no abuse of discretion in the trial court’s denial of Boyd’s untimely request for a continuance to obtain counsel. We further find that no manifest injustice occurred. This issue is without merit.
II. SENTENCE
¶ 11. Boyd argues that his sentence violates the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution. We disagree. “A sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal.” *6 Johnson v. State, 80 So.3d 136, 139 (¶ 9) (Miss.Ct.App.2012). “The imposition of a sentence is within the discretion of the trial court, and appellate courts will not review the sentence, if it is within the limits prescribed by statute.” Id. at 139-40 (¶ 9).
¶ 12. The jury found Boyd guilty of the sale of marijuana, greater than thirty grams but less than one kilogram, within 1,500 feet of a school or within 1,000 feet of the real property of a school. The trial court granted the State’s motion to amend the indictment to charge Boyd as a subsequent-drug offender.[5] The 120-year sentence imposed on Boyd by the trial judge did not exceed the punishment allowed under Mississippi Code Annotated section 41 — 29—139(b)(1) (Supp.2011), which was enhanced by Mississippi Code Annotated section 41-29-142 (Rev. 2009), and then enhanced again by section 41-29-147. Boyd’s sentence clearly falls within the statutory limits as set forth above.
¶ 13. Additionally, although not specifically raised by Boyd on appeal, we find no error in the amendment to Boyd’s indictment. Rule 11.03(1) of the Uniform Rules of Circuit and County Court mandates an indictment:
must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment.
Id. Speaking to the amendment of indictments, Uniform Rule of Circuit and County Court 7.09 provides:
All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as [a] habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement.... Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.
(Emphasis added).
¶ 14. While Rule 7.09 “does not speak to the timing of the amendment,” it instructs that “the defendant must be ‘afforded a fair opportunity to present a defense’ and ‘not be unfairly surprised.’ ” Gowdy v. State, 56 So.3d 540, 545 (¶ 16) (Miss.2010) (quoting URCCC 7.09). “This means that the defendant must be afforded due process of law and be given fair notice of ‘the nature and cause of the accusation.’ ” Id. (citing U.S. Const, amends. VI, XIV; Miss. Const, art. 3, §§ 14, 26).
¶ 15. In this case, we find no error in the amendment to Boyd’s indictment. The amendment neither affected Boyd’s defense to the underlying charge of selling marijuana within 1,500 feet of a school or within 1,000 feet of the real property of a school, nor did it prejudice his defense against the subsequent-drug-offender charge. In fact, Boyd failed to present any evidence during the sentencing hearing contesting the amendment to his indictment. Further, there is no unfair surprise to Boyd. During pretrial proceedings on the morning of trial, the State provided:
But we want Mr. Boyd to know on the record that he’s also a subsequent drug offender for an out-of-state conviction. And should we go to trial on this, the *7 State at sentencing, if we obtain a conviction, we’ll be seeking to double up to 80 years based on he’s a subsequent drug offender.
But if he wants to take advantage and watch the video and do the plea, the State, obviously, has no objection to an open plea as to the indictment as it reads right now.
In response, the following exchange occurred between the trial judge and Boyd:
BOYD: I’m not a lawyer so I can’t — I can’t make that decision. But Mr. Evans, I do not want him.
COURT: No, no, no, no, no, Mr. Boyd. That’s not how it works. Lawyers don’t make decisions about whether or not you plead guilty and accept a plea bargain offer. You make that decision. That’s strictly up to you. A lawyer can’t decide that for you. All a lawyer can do is go over the discovery with you, tell you what evidence the State has and give you their opinion as to your likelihood of conviction or acquittal.
BOYD: Well, I — I don’t — I don’t agree with that, your Honor. I — I really don’t want him to represent me, period.
COURT: That’s fíne, Mr. Boyd—
BOYD: Okay.
COURT: — he doesn’t have to, but I’m starting your trial at about 10:00 o’clock this morning.
BOYD: Yes, sir. If /all gone do me like that, you know, that’s fine. But I’m — I’m not gonna go through it with him like this, no, sir.
COURT: That’s fíne. You don’t have to.
BOYD: This is wrong.
COURT: We’re starting your trial at 10:00 o’clock.
BOYD: That’s fine.
[[Image here]]
COURT: I would suggest you go look at that video before you make any further decision.
BOYD: No, sir. I’m done anyway.
Boyd then proceeded to trial, and the jury found Boyd guilty of selling more than thirty grams but less than one kilogram of marijuana within 1,500 feet of a school or within 1,000 feet of the real property of a school. The next morning, at the sentencing hearing, the State filed a motion to amend the indictment to charge Boyd as a subsequent drug offender, and attached Boyd’s judgment of conviction to the motion. The trial court ordered the amendment without any objection from Boyd.
¶ 16. Our supreme court in Gowdy, 56 So.3d at 544-46 (¶¶ 14-22), recently held that if a defendant has no pretrial notice of the State’s intent to amend an indictment to seek enhanced penalties based upon habitual-offender status, then the amendment is impermissible. However, we find Gowdy to be both procedurally and factually distinguishable from the case at hand. In Gowdy, the defendant, Tyrone Gowdy, charged with DUI, rejected a plea deal where the State would have recommended a sentence of one year. Without knowledge that the State planned to seek a habitual-offender sentencing enhancement, Gowdy decided to forgo the capped plea recommendation and proceeded to a trial by jury. Following the jury verdict of guilty, the State for the first time provided Gowdy with notice of its intent to amend his indictment to include a habitual-offender charge. Approximately two months after trial, and just prior to the sentencing hearing, the trial court allowed the amendment over Gowd/s objection and sentenced Gowdy to life imprisonment. The Gowdy court, in discussing the impropriety of the amendment, stated:
There is no incentive for the State to be diligent in obtaining a prospective indict- *8 ee’s criminal record in advance of presenting a new charge to a grand jury and timely complying with Rule 11.03 if it may simply amend the indictment at any time before sentencing. Had that occurred in this case, Gowdy would have been in a better position to make an informed and rational decision when presented with a proposed plea bargain.
... [Njotice of the charge includes notice of the applicable minimum and maximum penalties. Under Rule 8.04(A)(4)(b), before a defendant can plead guilty, the trial court has a duty to ensure that he “understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law.” The rule should not be different for defendants who choose to exercise their right to trial by jury.
Id. at 546 (¶¶ 20-21).
¶ 17. In making its findings, the supreme court in Gowdy relied on its prior decision in Akins v. State, 493 So.2d 1321 (Miss.1986). In Akins, the defendant was without notice of the State’s intent to amend the indictment until after trial. The Akins court found the post-trial amendment, which substituted the more severe habitual-offender sentencing enhancement, carrying a mandatory life sentence, for the lesser enhancement, was an impermissible amendment. Akins, 493 So.2d at 1322. In recognizing the supreme court’s inconsistency on the issue of post-trial notice of intent to amend an indictment to seek habitual-offender status, the Gowdy court overruled its prior decision, Torrey v. State, 891 So.2d 188, 194-95 (¶¶ 35-39) (Miss.2004), where the supreme court determined that no reversible error had occurred in a post-trial amendment to an indictment adding a habitual-offender charge, to the extent it conflicted with the holding in Gowdy. Gowdy, 56 So.3d at 546 (¶ 22).
¶ 18. As stated, we find that Boyd’s case differs from Gowdy. Unlike the defendant in Gowdy, Boyd knew prior to trial that the State sought to charge him as a subsequent drug offender. Confronted with notice that the State sought to amend his indictment based on his status as a subsequent drug offender, Boyd rejected the State’s plea deal and proceeded to trial. Therefore, no unfair surprise to Boyd occurred.
¶ 19. As noted by this Court in Newberry v. State, 85 So.3d 884, 889 (¶ 16) (Miss.Ct.App.2011), “Sufficient formal notice of the State’s intent to seek habitual-offender status is the controlling aspect, not the timing of the court’s ruling on the requested amendment.” The Newberry court further stated: “We do not find that our supreme court in Gowdy intended to establish an absolute, indispensable rule that a trial judge’s decision to withhold ruling on the State’s request to amend an indictment to allege habitual-offender status creates an unfair surprise.” Id.
¶ 20. Here, Boyd had sufficient pretrial notice of the State’s intention to amend the indictment to include the subsequent-drug-offender charge. We find that the State provided sufficient notice to allow Boyd to prepare a defense against the subsequent-offender charge, to which he apparently had no defense. Additionally, the pretrial notice allowed Boyd to make an informed decision as to whether to accept the proposed plea deal by the State, which he chose to reject with knowledge of the potential consequences of doing so.
¶ 21. Based on these reasons, we affirm Boyd’s conviction and sentence.
¶ 22. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF THE SALE OF MARIJUANA, A SCHEDULE I CONTROLLED SUBSTANCE, WITHIN ONE THOUSAND FIVE HUNDRED FEET OF A BUILD *9 ING OR OUTBUILDING OF CANTON ALTERNATIVE SCHOOL IN MADISON COUNTY, MISSISSIPPI, OR WITHIN ONE THOUSAND FEET OF THE REAL PROPERTY OF CANTON ALTERNATIVE SCHOOL, AS A SUBSEQUENT DRUG OFFENDER, AND SENTENCE OF ONE HUNDRED TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO BE RELEASED AFTER SIXTY YEARS, AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. The State's motion to amend the indictment stated that on or about May 22, 2000, in the Circuit Court, Branch 7, of Brown County, Wisconsin, Boyd was previously convicted of possession of cocaine, with intent to manufacture or deliver, and he was sentenced to serve six years in the custody of the Wisconsin State *3 Prisons. The State attached a copy of Boyd’s judgment of conviction to the motion.

. For the purposes of brevity, we have corn-bined Boyd’s first and second assignments of error.

. First, Boyd points to an exchange between the trial court and prospective juror 48. During voir dire, unidentified juror 48 stated, "I just have one question. Why doesn’t he have an attorney? I mean is he not supposed to have one?” The court responded, "Everybody has a Constitutional right to have an attorney.... You can't make someone have an attorney.... I can’t force an attorney on anybody.” Next, Boyd points to an exchange that occurred between Nicole Nichols, another potential juror, and the State during jury selection outside the presence of the venire. After Nichols claimed that she might know Boyd and that it might be "awkward” for her to sit on the jury, the State asked Nichols, "Do you believe that awkwardness would cause you perhaps to not be fair to the State in this case and lean more toward Mr. Boyd?” Nichols responded negatively. The State later peremptorily struck Nichols from the jury.

. See also Sturkey, 946 So.2d at 793-94 (¶ 8).

. As previously noted, the State provided pretrial notice to Boyd and his former counsel of the State's intent to amend his indictment to charge him as a subsequent drug offender.