# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00540-COA

CORTAVIUS FERGUSON A/K/A CORTAVIUS MONTA FERGUSON A/K/A TAY TAY A/K/A CORTAVIUS M. FERGUSON

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2017 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE M. MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH S. HEMLEBEN |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 09/18/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., FAIR AND TINDELL, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1. Cortavius Ferguson appeals his conviction of two counts of armed robbery and argues that text messages recovered from his cell phone were erroneously admitted into evidence. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On May 22, 2016, at approximately 9:40 p.m., Michael Fedrick entered the Dollar General located on Highway 35 in Attala County. While Michael was paying for his items, a man, dressed in all black, entered the store and pointed a gun at his head, ordered him to

the ground, and demanded his wallet. The man, who was later identified as Ferguson, removed approximately $700 in cash from Michael's wallet and threw the wallet back at Michael.

¶3. Additionally, Ferguson pointed the gun at the store cashier, Tissy Hall, and demanded money from the cash register. After he got money out of the cash register, Ferguson demanded that Hall open the store's safe. When Hall advised that she did not have access to the safe, Ferguson ran out of the store.

¶4. Beverly Fedrick, Michael's wife, was waiting outside the Dollar General in their truck. She observed a man with a gun enter the store. As a result, she called 9-1-1. According to Beverly, the man was wearing all black "from head to toe," including a black hooded sweatshirt, and "green and navy blue or black . . . tennis shoes" that had a "swoosh" on them. The man ran out of the store headed in the same direction from which he entered.

¶5. Shortly thereafter, Sue Carter, who lives across the street from the Dollar General, heard a knock at her door and discovered Ferguson sitting on her doorstep. Carter knew Ferguson from her employment as a substitute teacher. Carter noticed Ferguson was not wearing shoes and asked him what was wrong. Ferguson advised that he had had an argument with his girlfriend and ran to her house in order to avoid an altercation. Carter then went inside, called 9-1-1, and remained on the phone until the police arrived at her house.

¶6. Carter's adult son, Wesley Goodman, also spoke to Ferguson. According to Goodman, Ferguson was wearing a black t-shirt and black shorts but did not have on socks or shoes. Ferguson asked Goodman for some shorts because he had "messed his clothes up"

2

running from his girlfriend's house.

¶7.    Deputy Sheriff Scott Walters arrived at the Dollar General in response to the 9-1-1 call. He was subsequently advised that the possible suspect was across the street. Deputy Walters then proceeded to Carter's house and apprehended Ferguson. At the time of his arrest, Ferguson had $837 in his pocket, as well as a cell phone.

¶8.    Following Ferguson's arrest, Deputy Walters "backtracked" and searched the area between Carter's house and the Dollar General. Deputy Walters located a black handgun on the ground in Carter's backyard. The gun was loaded with a round in the chamber.

¶9.    Additionally, Deputy Scott Chunn discovered a pair of Nike tennis shoes, a pair of socks, a black hooded sweatshirt, and some black pants, all located in Carter's backyard. The black clothing was piled on top of each other.

¶10.   Investigator Zelie Shaw obtained a search warrant for the cell phone found in Ferguson's pocket and sent the phone to the Cyber Crimes Unit of the Attorney General's Office for processing and data extraction. She further obtained a search warrant for DNA swabbing. After she received a DNA swab from Ferguson, Investigator Shaw sent the DNA sample, the handgun, and the clothing to Scales Biological Laboratory for testing.

¶11.   Prior to trial, Ferguson moved in limine to exclude the text messages recovered from the cell phone. Following a hearing, the circuit court denied the motion.

¶12.   At trial, video surveillance of the armed robberies was admitted into evidence and published to the jury. Video footage from Deputy Walters's body camera was also admitted and published to the jury.

3

¶13. Kathryn Rogers, a forensic DNA analyst employed by Scales Biological Laboratory, testified as an expert in DNA analysis. Rogers conducted a DNA analysis on the handgun and was able to exclude Ferguson as the source of the DNA on that item. However, she agreed that if someone was wearing gloves while holding an item, it would be unlikely for her to find DNA on that item. Rogers further tested two gloves found in the pocket of the hooded sweatshirt. She explained that a mixture of DNA was obtained from the gloves and, as a result, she was unable to include or exclude Ferguson as a contributor. Rogers last tested the hooded sweatshirt and could not exclude Ferguson as a contributor to the DNA found on that item.

¶14. Investigator Charlie Rubisoff with the Attorney General's Cyber Crimes Unit, testified as an expert in forensic computer examination. Rubisoff testified that he was able to recover data from the cell phone found on Ferguson at the time of his arrest. The recovered data included text messages sent and received in the hours prior to the armed robberies. The text messages were introduced into evidence without objection by Ferguson.

¶15. The text-message conversation is as follows, with the messages sent from Ferguson noted as "Sent" and the messages received from an unidentified individual noted as "Read":

Read: Wya cuz

Sent: Ko

Read: Yhu coming to the hood

Sent: Need some money let me holding something

Read: I had to get that car out it was 401 I need to hit a lick

Sent: You got a strap

Read: I had a 40 big Sam still got my pistor

Sent: You can't go get it

Read: I don't got his number FAM

Sent: You know where he stay

Read: Down by o-town

Sent: On the hill

Read: Yhu know getting off the trace rite there to the rite yhu know big Sam don't yhu

Sent: Yea I told you on the hill that what they call it

Read: Yeah

Sent: Well go get it you playing

Read: Bruh that's the point I don't have a ride, fam

Read: Let me hit that nosecandy

Read: So yhu can't find know tool

Sent: I thought you said you had to get the car and I do[;] I need another one for my partner[;] I got you if you can get me that tool

Read: I do but I don't got know way fam

Sent: Wya

Read: In dossville

Sent: Aite

Read: Yea

Sent: My guy got some candy you want some

¶16. Investigator Shaw explained to the jury that "hit a lick" means to rob a place or person, and "strap," "tool," and "40" all refer to a gun.

¶17. Ferguson was convicted of two counts of armed robbery. He was sentenced to thirty-five years in the custody of the Mississippi Department of Corrections on each count, with the sentences to run concurrently. He was further ordered to pay all court costs, fees, and assessments.

¶18. Ferguson subsequently filed a motion for a judgment notwithstanding the verdict or, alternatively, a new trial, which was denied. He now appeals and argues: (1) the circuit court erroneously admitted the text messages recovered from his cell phone, and (2) he received ineffective assistance of counsel.

ANALYSIS

*I. Admissibility of the Text Messages*

¶19. Ferguson first argues the circuit court "erred in admitting hearsay testimony from the text messages recovered from [his] [cell] phone." "The admission or suppression of evidence is within the sound discretion of the [circuit] judge and will not be reversed unless there is an abuse of that discretion." *Sturkey v. State*, 946 So. 2d 790, 794 (¶11) (Miss. Ct. App. 2006). "We will only reverse under that standard if the admission of the evidence results in prejudice or harm to the opposing party, or if it adversely affects a substantial right of the party." *Id.*

¶20. Pursuant to Mississippi Rule of Evidence 801(c), a hearsay statement is one that "(1)

the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." However, under Rule 801(d)(2)(A), "a statement is not hearsay if [t]he statement is offered against an opposing party and was made by the party . . . ."

¶21. Here, the text messages at issue were recovered from a cell phone in Ferguson's possession at the time of his arrest. As acknowledged by Ferguson, the statements sent from his phone are not considered hearsay under Rule 801(d)(2)(A).[1] However, Ferguson claims the messages "coming in to [his] phone are hearsay without an exception" and "should have been excluded." We disagree, as the record indicates the incoming statements were not offered in evidence to prove the truth of the matter asserted in the statement.

¶22. In *Brown v. State*, 969 So. 2d 855, 857 (¶1) (Miss. 2007), Brown was indicted on the sale of a controlled substance. At trial, the State introduced an audiotape that depicted the pre-buy arrangements among a confidential informant and unknown persons. *Id*. at 860 (¶14). Brown objected to the audiotape's introduction on various grounds, including hearsay. *Id*. Specifically, Brown argued that because no one was able to identify the voices on the audiotape, other than the confidential informant's voice, the audiotape was inadmissible hearsay. *Id*. at 861 (¶15). However, on appeal, the Mississippi Supreme Court disagreed and found as follows:

> While it is true that neither the [confidential informant] nor the law enforcement officers who testified for the State could identify Brown's voice on the tape, the failure to identify Brown does not render the tape inadmissible.

---

[1] In his appellate brief, Ferguson acknowledges that "any messages sent from [his] phone [are] admissible under a hearsay exception."

> In fact, the tape was offered to prove that pre-arrangement conversations had taken place, as [the confidential informant] and other law enforcement officers had previously testified. In effect, the audiotape corroborated the various witnesses' testimony. Therefore, sufficient testimony existed to admit the tape for the purposes of proving that the conversations had taken place as well as the gist of those conversations. The audiotape was not offered to show that Brown was involved in the pre-arrangement conversations, nor could it have been . . . . The State had no need to prove these statements, or any of the other statements on the audiotape, were true. Thus, the statements were not hearsay, and the [circuit] court properly overruled Brown's hearsay objection.

*Id*. at (¶¶16-17).

¶23.    Here, the text messages sent from Ferguson prove a conversation took place prior to the armed robberies and show that Ferguson needed money and was looking for a gun. As in *Brown*, the text messages from the unidentified individual to Ferguson were not offered to prove the truth of the matters asserted. Instead, the messages give context to Ferguson's statements, namely that Ferguson was looking for a gun. As a result, the statements were not hearsay under Rule 801(c).

¶24.    Additionally, we do not find that the admission of the text messages resulted in prejudice or harm to Ferguson in light of the evidence presented at trial. *Sturkey*, 946 So. 2d at 794 (¶11). Indeed, the record shows Ferguson was apprehended within a short distance from the Dollar General; money, in approximately the same amount taken from the Dollar General, was found on Ferguson; a loaded handgun with a round in the chamber was found in the area where Ferguson was located; tennis shoes and clothing similar to what witnesses described Ferguson wearing were also found in the area; a black sweatshirt similar to the one Ferguson can be seen wearing in surveillance footage was located in the area where Ferguson was arrested; and DNA evidence linked Ferguson to the sweatshirt. Accordingly, the circuit

8

court did not abuse its discretion in admitting the text messages.

## II. Ineffective Assistance of Counsel

¶25. Ferguson further argues he received ineffective assistance of counsel. Specifically, Ferguson claims his trial counsel was ineffective for failing to object to the admission of the text messages on the basis of hearsay.

¶26. To prove ineffective assistance of counsel, Ferguson must show: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "We look at the totality of the circumstances to determine whether counsel's [performance was] both deficient and prejudicial." *Dartez v. State*, 177 So. 3d 420, 423 (¶19) (Miss. 2015). "[A] presumption exists that an attorney's performance falls within the wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic." *Braggs v. State*, 121 So. 3d 269, 273 (¶11) (Miss. Ct. App. 2013). "Only where it is reasonably probable that, but for the attorney's errors, the outcome would have been different, will we find that counsel's performance was deficient." *Dartez,* 177 So. 3d at 423 (¶19).

¶27. "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. Ct. App. 2016). This Court may address ineffective-assistance-of-counsel claims on direct appeal only where: "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not

9

needed." *Id.*

¶28. Here, the record does not affirmatively show ineffectiveness of constitutional dimensions. Additionally, there is no stipulation by the parties that the record is adequate to address this claim. In fact, the State asserts that "Ferguson's claim is not proper for review on direct appeal." Thus, we are unable to adequately and properly address Ferguson's ineffective-assistance-of-counsel claim on direct appeal. We therefore deny this issue without prejudice to afford Ferguson the option to pursue his claim in a post-conviction proceeding. *See Williams v. State*, 228 So. 3d 949, 952-53 (¶14) (Miss. Ct. App. 2017) ("[Appellant]'s ineffective-assistance-of-counsel claim is more appropriately brought during postconviction proceedings, and we therefore deny relief without prejudice as to [his] right to pursue this claim during postconviction proceedings.").

CONCLUSION

¶29. We find Ferguson's claim regarding the admissibility of the text messages is without merit, and his ineffective-assistance-of-counsel claim is denied without prejudice. We affirm the judgment of the Attala County Circuit Court.

¶30. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**